426 So.2d 1063 (1983)
PALM BEACH COUNTY, Robert D. Apelgren and Joe Tom Boynton, Appellants,
v.
TOWN OF PALM BEACH, a Municipal Corporation, City of West Palm Beach, a Municipal Corporation, City of Boca Raton, a Municipal Corporation, Allen C. Clark, Tax Collector of Palm Beach County, the Village of North Palm Beach, a Municipal Corporation of the State of Florida, et al., Appellees.
No. 81-1553.
District Court of Appeal of Florida, Fourth District.
January 26, 1983.
Rehearing Denied January 26, 1983.
*1064 Robert L. Nabors of Nabors, Potter, McClelland, Griffith & Jones, P.A., Titusville, and Charles F. Schoech, County Atty., West Palm Beach, for appellant Palm Beach County.
Christopher J. Schilling and Paul C. Wolfe of Jones & Foster, P.A., West Palm Beach, for appellants Apelgren and Boynton.
John A. DeVault, III, of Bedell, Bedell, Dittmar & Zehmer, P.A., Jacksonville and W. Peter Burns of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for appellee Town of Palm Beach.
Carl V.M. Coffin, West Palm Beach, for appellee City of West Palm Beach.
M.A. Galbraith, Jr., Boca Raton, for appellee City of Boca Raton.
Paul M. Sullivan, Jr., of Nason, Gildan & Yeager, P.A., West Palm Beach, for appellee Village of North Palm Beach.
*1065 HERSEY, Judge.
This is an appeal from a final judgment which determined that appellant, Palm Beach County, is taxing property in four municipalities, appellees here, for services or programs which were "exclusively for the benefit of property or residents in unincorporated areas" in violation of Article VIII, Section 1(h), Florida Constitution and Sections 125.01(6) and 125.01(7), Florida Statutes (1979).
In separate complaints the Town of Palm Beach, the City of West Palm Beach, the City of Boca Raton, and the Village of North Palm Beach challenged taxation for fourteen services or programs provided by the county. The cases were consolidated for trial. Robert D. Apelgren and Joe Tom Boynton, owners of property in the unincorporated areas of the county and residents of the Village of North Palm Beach and the City of West Palm Beach, respectively, were permitted to intervene as defendants.
As a result of pretrial negotiations many of the fourteen original issues were resolved. The trial was limited to the cost of the Palm Beach County Sheriff's road patrol and detective division and the cost for construction and maintenance of county roads and bridges not on the classified county road system. Additionally, the Town of Palm Beach and the City of West Palm Beach challenged the cost of construction and maintenance of neighborhood parks and recreation areas. After a three day trial each of these issues was resolved adversely to the county which now appeals.
The county is alleged to have violated Article VIII, Section 1(h) of the Florida Constitution (1968), which provides: "Properties situated within municipalities shall not be subject to taxation for services rendered by the County exclusively for the benefit of property or residents in unincorporated areas."
The implementing legislation, Section 125.01, Florida Statutes as presently amended and in effect, provides:
(6)(a) The governing body of a municipality or municipalities by resolution, or the citizens of a municipality or county by petition of 10 percent of the qualified electors of such unit, may identify a service or program rendered specially for the benefit of the property or residents in unincorporated areas and financed from countywide revenues and petition the board of county commissioners to develop an appropriate mechanism to finance such activity for the ensuing fiscal year, which may be by taxes, special assessments, or service charges levied or imposed solely upon residents or property in the unincorporated area, by the establishment of a municipal service taxing or benefit unit pursuant to paragraph (q) of subsection (1), or by remitting the identified cost of service paid from revenues required to be expended on a countywide basis to the municipality or municipalities, within 6 months of the adoption of the county budget, in the proportion that county ad valorem taxes collected within such municipality or municipalities bears to the total amount of countywide ad valorem taxes collected by the county, or by any other method prescribed by state law.
(b) The board of county commissioners shall, within 90 days, file a response to such petition, which shall either reflect action to develop appropriate mechanisms or reject said petition and state findings of fact demonstrating that the service does not specially benefit the property or residents of the unincorporated areas.
(7) No county revenues, except those derived specifically from or on behalf of a municipal service taxing unit, special district, unincorporated area, service area, or program area, shall be used to fund any service or project provided by the county where no real and substantial benefit accrues to the property or residents within a municipality or municipalities.
Judicial consideration has resulted in opinions which establish that the intention of the constitutional provision is to prevent the taxation of property within a municipality to pay "for services from which the owners of said property received no real or substantial benefit ... [which *1066 benefit need not be] direct and primary [as long as it is] not merely illusory, ephemeral and inconsequential." City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817, 822-823 (Fla. 1970). Potential as well as actual (present) benefits may be considered. Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973). If any such benefit can be demonstrated then taxation is permissible. Briley, Wild, 239 So.2d at 817. The somewhat unique concept embodied in this constitutional provision which prohibits taxation without corresponding (but not necessarily commensurate) benefit does not prohibit "dual taxation" or "double taxation" as those terms are ordinarily understood. What is prohibited is "taxation without benefit" although, as with all oversimplifications, application of this term does not automatically ensure accuracy of analysis or result.
The constitutional provision prohibiting taxation without benefit applies only to taxes imposed on property. Manatee County v. Town of Longboat Key, 365 So.2d 143 (Fla. 1978). This prohibition was extended to include all county revenues, with specific exceptions, by Section 125.01(7), Florida Statutes (1979). The extension eliminates any supposed necessity to trace dollars produced from the taxation of property within a municipality into the challenged service or program. It in effect requires the county to finance any service or program which benefits only the unincorporated areas through one of the mechanisms established by the statute.
Before turning to an examination of the record and an analysis of the specific legal issues involved in this appeal, we address a few preliminary considerations. The constitutional provision prohibits taxation of property within a municipality for services or programs exclusively for the benefit of the unincorporated areas. Literal application of the constitutional language would lead to the result that if municipality A is benefited by a service then that service is not exclusively for the benefit of the unincorporated areas. Ipso facto the property in municipality B can be taxed for that service whether or not municipality B derives any benefit. In applying Article VIII, Section 1(h), however, our supreme court fashioned the "real and substantial benefit" test which is now incorporated into Section 125.01(7), Florida Statutes. City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817 (Fla. 1970). Under this test a municipality challenging a county service is required to demonstrate that its property or residents receive no real and substantial benefit from the identified source. The municipality need not show that the identified service is rendered exclusively for the benefit of unincorporated areas (i.e. that no municipality within the county receives a real and substantial benefit). As stated by the Briley, Wild court, "the framers of the provision, and the people in adopting it, intended to prevent future taxation by counties of city-located property for services from which the owners of said property received no real and substantial benefit." Id. at 822.
Although enacted to implement the constitutional intent, the statute does not anticipate the implications inherent in the remedies provided. Once a municipality proceeds successfully under Section 125.01(6)(a) to show no benefit, the county is given three alternatives. It can establish a municipal service taxing or benefit unit or it can levy taxes, special assessments or service charges upon residents or property in the unincorporated areas to pay for the cost of the service or program. In either event all of the municipalities in the county are relieved of this expense. This is so because the first alternative permits charges "solely upon residents or property in the unincorporated area" (thereby excluding municipalities) and the second alternative provides for the "establishment of a municipal service taxing or benefit unit pursuant to paragraph (q) of Subsection (1)" which, by definition, excludes municipalities. These remedies would seem to be appropriate only in a case in which every municipality in the county has established that the service or program provides no real and substantial benefit. To illustrate, if *1067 municipality A proceeds under the statute and successfully shows that a county's mosquito control program does not provide any real and substantial benefit because A has its own program, but the county program, consisting of daily spraying from aircraft, benefits all other municipalities in the county, then if the county adopts either of the first two statutory alternatives, the residents and property in the unincorporated areas are required to bear all of the expense of the program which, in this hypothetical, benefits all municipalities save one. Such a result would appear to be at least as inequitable as taxing municipalities for programs exclusively for the benefit of the unincorporated areas.
A solution would be to amend the statute to permit the inclusion in municipal service or benefit units of property located in those municipalities which have not successfully shown no real and substantial benefit from this service or program or to permit special taxes, assessments or service charges to be levied against them (the first and second alternatives available to the county under the statute).
On the other hand, if the county selects the third alternative and determines to remit the identified cost of the service paid from county wide revenues to the municipality(s), the statute requires reimbursement only to those municipalities which "identify the service," petition the county and ultimately prevail in any necessary litigation. This raises the additional question: what happens in the next succeeding fiscal year if no petition is filed or other proceedings are instituted under the statute. We note also that the constitution speaks of exclusive benefit whereas Section 125.01(6)(b) speaks of special benefit.
Another practical difficulty which emerges from analysis of the underlying legislation and the test which it requires is that the challenging municipality must prove a negative. That is, the burden to demonstrate a violation of the constitutional prohibition requires a showing of no real and substantial benefit accruing to the municipality. Even in the simplest of transactions the burden of proving a negative can be an onerous one.
The problems which we enumerate may ultimately be remedied by the legislature but until the statute is appropriately amended, courts will be required to formulate remedies that at least attempt to avoid transgressions on the constitutional mandate without creating a monster in the process.
In Alsdorf v. Broward County, 373 So.2d 695 (Fla. 4th DCA 1979), we noted that a determination of benefit in one case will have little precedential value for use in another case because each challenge must be considered in relation to the facts, taxable years and circumstances involved in the immediate case. We did not mean to imply by that language that the municipality must mount an attack on a particular service or program in each succeeding fiscal year nor did we intend to totally eliminate the precedential value of cases in this area. Once it has been judicially determined that a service or program is of no real and substantial benefit to the municipalities, it will be presumed that the same conditions prevail unless and until there is a judicial determination to the contrary. The same procedure would apply where a benefit to the municipality is initially established so that the burden would be upon the municipality to renew its attack. With those admonitions, it may be illustrative and therefore instructive, to observe the types of services and programs that have thus far been considered by the courts.
In the seminal case, City of St. Petersburg v. Briley, Wild & Assoc., Inc., 239 So.2d at 817, the supreme court held the construction and expansion of county sanitary sewer facilities would provide a real and substantial benefit even to municipalities not connected into the system because pollution and disease were county-wide problems knowing no geographical boundaries. Burke v. Charlotte County, 286 So.2d at 199 held that repair and maintenance of county roads outside of the municipalities constituted a real and substantial benefit to the municipality. This court, in Alsdorf, *1068 373 So.2d at 695, affirmed the trial court's findings that a county-wide library system and the sheriff's road patrol provided real and substantial benefits to the municipalities involved in that case. The trial court's additional findings that a county-wide emergency medical program constituted a benefit to some municipalities and not others and that neighborhood parks did not provide such a benefit went unchallenged on appeal. Most recently, in City of Ormond Beach v. County of Volusia, 383 So.2d 671 (Fla. 5th DCA 1980), a county-wide library system was held to furnish a real and substantial benefit to the municipality.
Conversely the trial court, in Manatee County, 352 So.2d at 869, had found that the following services and programs did not constitute a real and substantial benefit to some of the plaintiff-municipalities: road patrol, investigations, and communications; road and bridge construction and repair; planning and development; county bus system; fire control; lot clearing; and land fill and mosquito control. This determination was affirmed on appeal with one exception not helpful to our analysis. With that history in perspective we turn to an examination of the issues presented by the instant appeal which track the issues at trial with the addition of an evidentiary issue involving expert testimony.

I. The Sheriff's Road Patrol and Detective Division.

Based on its view of the evidence in the present case the trial court found that the municipalities did not enjoy a real and substantial benefit from the Palm Beach County Sheriff's road patrol and detective division. On this point the trial court made the following specific finding:
The greater weight of the evidence, indeed the clear and convincing force of the evidence, supports the position of the four municipalities that the road patrol and detective division of the Sheriff of Palm Beach County adds no real or substantial benefit to the municipalities of the Town of Palm Beach, City of Boca Raton, City of West Palm Beach, and the Village of North Palm Beach. Any benefits which exist are, at best, inconsequential.
The appellate function initially is to determine whether the trial court's findings of fact are based upon substantial competent evidence. LaCroix v. Higgins, 289 So.2d 743 (Fla. 4th DCA 1974); Alsdorf, 373 So.2d at 695. The inquiry does not stop there. It is then incumbent upon the appellate court to determine whether the appropriate rule of law has been applied to the factual findings.
The record supports the conclusion that the primary purpose of the sheriff's road patrol division is to operate as a police force for the unincorporated areas of Palm Beach County. The division does not regularly patrol any of the four plaintiff municipalities. The road patrol is a response-to-call service; however, a person calling from one of the plaintiff municipalities is ordinarily referred to the appropriate municipal police department.
The detective division differs from the road patrol in that it conducts follow-up investigations requiring substantial amounts of time or special expertise. All four plaintiff municipalities have their own detective divisions. The evidence, however, shows that the sheriff's office handles all bad check investigations and polygraph examinations for North Palm Beach. Further, the sheriff participated in and assisted Palm Beach with several lengthy and complex investigations, specifically including a notorious murder and a multi-million dollar safe deposit box robbery. Boca Raton also received assistance from the sheriff's office in a double homicide case.
Plaintiffs prepared and introduced into evidence charts based on two types of records maintained by the sheriff's department. One chart illustrates the number of times during a specified fiscal year that an "assist" to the police of a named city was recorded by a deputy and the percentage of the sheriff's total law enforcement activity consisting of such assists.
The county, on the other hand, presented evidence indicating that the statistical data *1069 relied on in the preparation of this chart was unreliable, pointing out that, according to various individual reports introduced by the county, many "assists" were not reported by the assigned deputies. Additionally, the county argued that the cold statistics do not accurately reflect the amount of time, effort, or money expended on a particular "assist."
The second chart introduced by the municipalities is based upon the number of times the sheriff's office responded to areas designated by a grid code of which certain grids correspond to the four plaintiff municipalities. Thus, there is a record of each time a deputy responds to a call within the geographical limits of one of the municipalities.
This data, however, reflects only direct contact within a municipalities' boundaries; it does not show a contact where other activity of benefit actually occurred in the unincorporated areas. For example, property stolen in one of the municipalities but recovered in the county (or in another municipality) would only be accorded the grid code of the location where recovery occurred. The same reasoning would apply to a kidnapping or a murder where the crime was committed within a city but the suspect is apprehended elsewhere. Accordingly, the statistics are not a completely accurate reflection even of direct benefits received by the municipalities from the sheriff's office. The charts do have probative value to the extent that they demonstrate a minimum number of contacts.
Another factor that arises in the present case and one that we considered in Alsdorf, is the undeniable benefit to the municipalities of activity of the sheriff's road patrol and detective division resulting in reducing the crime rate in the unincorporated areas and particularly in the eastern urban corridor adjacent to these municipalities, lessening the potential spill-over of that criminal activity. There are, in addition, more remote but potential benefits in the form of the backup capability of the sheriff's department available in time of emergency or particular need and the crime deterrent factor resulting from the visibility of marked sheriff's patrol vehicles in and around the municipalities.
As these latter examples demonstrate, not every benefit that the municipalities derive from the road patrol and detective division are quantifiable, as that term has been used by the parties throughout this appeal. The direct and demonstrable benefits when coupled with these unquantifiable benefits compel the conclusion that, in total, the municipalities enjoy a real and substantial benefit from the sheriff's road patrol and detective division. We therefore conclude that the trial court's holding to the contrary is not supported by substantial competent evidence.

II. Roads.

Palm Beach County has two road systems: a county connected road system which provides a county-wide network of transportation to and throughout the municipalities (known as classified roads) and a local road or subdivision street system (nonclassified roads). The municipalities do not challenge the benefit provided by the classified roads (including signals and traffic signs) but do question the benefit (or, more accurately, lack of benefit) received from the nonclassified roads.
An expert witness for the municipalities testified that the nonclassified roads do not provide any real and substantial benefit to the four municipalities because they do not provide an interconnecting transportation network, but serve only abutting property. The expert based his conclusion upon maps of the D.O.T. and a listing of road reclassifications (from the old state secondary road system). The witness did not physically examine any of the roads nor examine any plats nor did he make a determination as to whether the abutting property was commercial or residential. The only specific items of information about the roads available to the expert were the road number or name, the extent of right-of-way, the section and township, the range, where the road begins, in what direction it runs, where the road terminates, and a book and *1070 plat number. He had no information about the number of vehicles using the individual roads, the number of people living on the roads, or the characteristics of abutting property.
The County Engineer, testifying at trial, identified at least 13 roads or segments of roads not on the classified county road system which have traffic volumes comparable to those of classified roads. He also testified that the 13 roads were comparable to classified roads in that they connected with similar type roads and were alike in terms of size, width, and the general neighborhoods in which they are located.
The foregoing brief summary is intended to highlight the two problems we have with the treatment of this issue in the trial court. The first difficulty we observe might be characterized as one of classification. There are surely dirt roads and subdivision streets in the county which are of absolutely no benefit to any municipality. The record supports that conclusion if common sense is not deemed a sufficient predicate. The problem is that the proofs are not sufficient to show that all roads in the unclassified system fall in that category. In fact, the evidence tends to support the conclusion that some unclassified county roads provide a real and substantial benefit. The municipalities have the burden of identifying the service and proving lack of benefit. They placed all their eggs in one basket when they chose to contest taxation on the basis of the classification system rather than on the basis of a number of specified roads and as a result the municipalities cannot prevail on this record.
Secondly this issue raises problems in the manner of proof. Regardless of the expertise of the witness, generally, and his familiarity with legal concepts relating to his specific field of expertise, it is not the function of the expert witness to draw legal conclusions. That determination is reserved to the trial court. It was appropriate for the expert to testify regarding the existence of a benefit but it was for the court to determine whether that benefit was real and substantial under the statute and case law. It appears that the trial court may have been unduly persuaded by the expert testimony in this regard. (We do not overlook Section 90.703, Florida Statutes (1981), in reaching this conclusion.) For these reasons we hold that the findings of the trial court on this issue are not supported by substantial competent evidence.

III. Neighborhood Parks (Town of Palm Beach; City of West Palm Beach).

A neighborhood park is defined as a small facility located within walking distance of those for whose use it is intended. Normally there are no structured or supervised activities. Neither West Palm Beach nor Palm Beach has a county operated neighborhood park located within its boundaries. Thus, appellees' expert concluded that the county's neighborhood parks were of no real or substantial benefit to those municipalities. The trial court's determination that no real and substantial benefit existed could only have been based on the testimony of the one expert regarding the nationally accepted definition of the term "neighborhood parks" buttressed by other opinion testimony, because absolutely no statistical data as to park attendance, residence of park users or other relevant factors was introduced into evidence. This is not sufficient to carry the municipalities' burden of proving no real and substantial benefit. The trial court's determination is therefore not supported by substantial competent evidence.

IV. Conclusion.

A. On each issue we have determined that there was (1) "a lack of substantial competent evidence" to support a finding of (2) "no real and substantial benefit." The able trial judge obviously concluded that there was substantial competent evidence to support a finding that any benefits shown did not measure up to his perception of the standard of "real and substantial." In fairness to the trial court and the parties, and to those who may seek guidance from this opinion, or means to overturn it, *1071 we suggest that one factor which distinguishes our holding from that of the trial court is in differing perceptions of the quantum and quality of benefit that is entailed in the concept of "real and substantial." We have considered the following language from Briley, Wild helpful to our analysis:
[L]iteral interpretation would be to hold that if the service proposed to be rendered by the County would be of the slightest benefit to property located in a particular municipality, however minute in quantity or quality, such service could not be said to be `exclusively for the benefit' of the unincorporated areas of the County... .
[The court then declined to apply this literal interpretation.]
.....
The witness appearing before the trial judge testified that indirect benefit would result to all of the property and residents of the entire county. .. .
[The court appears to consider this at least of some significance.]
.....
[W]e reject the argument of appellants that in order to avoid the proscription of Article VIII, Section 1(h) it is necessary that any benefit to municipalities be direct and primary. We hold that the proper interpretation of the language of this section of the Constitution does not require a direct and primary use benefit from a particular service to city-located property in order to remove the same from the proscription of the constitutional provision. It is sufficient to authorize county taxation of such property if the benefits accruing to the municipal areas are found to be real and substantial and not merely illusory, ephemeral and inconsequential. That it was not the intent of the framers of this provision of the Constitution to require a direct benefit to city-located property in order to avoid the proscription is evidenced by the fact that attempts to amend the provision to substitute the words `directly' and `primarily' for the word `exclusively' were defeated before the proposition was submitted to the people for approval.
.....
[Protection against sewage contamination and the resulting disease threat, however,] is not merely an incidental or collateral benefit which would result to the incorporated areas of the county by the correction of the problem in the unincorporated areas.
[All emphasis added.]
From the foregoing, we have concluded that benefit which is not merely indirect, inconsequential, incidental or ephemeral constitutes benefit which is real and substantial. In Briley, Wild the City of St. Petersburg was not to be connected into the sewer system, thus there was no direct benefit. In the present case both direct and indirect benefits are involved. Applying the foregoing standard we have therefore concluded that there was not substantial competent evidence to support findings that the services and programs referenced by the complaints filed in this cause did not provide real and substantial benefits to the respective municipalities.
B. The issues we have treated here will have no small impact on the governmental units directly involved and the taxpayers they represent. We would be remiss if we did not compliment counsel for thorough preparation and professional presentation of the issues before the trial court and for the obvious skill demonstrated in the briefs and on various oral arguments before this court. The parties have been exceedingly well represented. Our task has been made that much easier not only because of the demonstrated competence of all of the attorneys but also by the detailed and scholarly final judgment entered by the able trial judge. That our ultimate decision varies from his does not detract from the very real contribution which his summary of the case, legal analysis and conclusions made to our deliberations.
C. For the reasons previously expressed we reverse the final judgment and remand for such proceedings as may be appropriate *1072 to return the parties to the status quo which prevailed before judgment was entered. In view of our treatment of the ultimate issues, those presented on an interlocutory basis have been rendered moot and the trial court is directed to release and satisfy any conditions that were imposed by virtue of the stay granted below.
D. Because taxing entities and the taxpayers of the State of Florida are entitled to equitable and fair and uniform treatment under the taxing statutes regardless of the district in which they may reside or be located, we certify to the Supreme Court of Florida the following question as being one of great public importance.
Whether the "real and substantial benefits" test established by City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817 (Fla. 1970) has been correctly interpreted and appropriately applied in this case.
REVERSED AND REMANDED.
GLICKSTEIN, J., concurs.
DOWNEY, J., concurs in part and dissents in part with opinion.
DOWNEY, J., concurring in part and dissenting in part:
I concur entirely with the excellent opinion prepared for the Court by Judge Hersey vis-a-vis expenditures for the Sheriff's Road Patrol and Detective Division and the County Road System (nonclassified roads). However, I am unable to agree that the trial court's finding that there is no real or substantial benefit accruing to the property owners in the two municipalities involved is not supported by substantial competent evidence. The testimony of John Dance, the Director of Parks and Recreation for Palm Beach County, Robert A. Burdett, Director of Recreation for the City of West Palm Beach, and George Frost, Town Manager for the Town of Palm Beach, in my judgment, provide sufficient evidentiary support to demonstrate that neighborhood parks in the unincorporated areas of the county render real benefits only to the residents of the areas in close proximity to the parks.
Accordingly, honoring the trial judge's findings where supported by substantial competent evidence, I would affirm the judgment appealed from as regards the neighborhood parks and join in the reversal of the judgment with regard to the Sheriff's Patrol and Detective Division and the nonclassified county road system.