460 So.2d 879 (1984)
TOWN OF PALM BEACH et al., Petitioners,
v.
PALM BEACH COUNTY, et al., Respondents.
No. 63254.
Supreme Court of Florida.
October 18, 1984.
Rehearing Denied January 15, 1985.
*880 John A. DeVault, III of Bedell, Dittmar, DeVault, Pillans & Gentry, Jacksonville, and W. Peter Burns of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for Town of Palm Beach.
Carl V.M. Coffin, West Palm Beach, for City of West Palm Beach.
M.A. Galbraith, Jr., Boca Raton, for City of Boca Raton.
Nason, Gildan & Yeager, P.A., Paul M. Sullivan, Jr., West Palm Beach, for Village of North Palm Beach.
Charles F. Schoech, Co. Atty., West Palm Beach, and Robert L. Nabors of Nabors, Potter, McClelland, Griffith & Jones, Titusville, for respondents.
ADKINS, Justice.
This cause comes before us on petition for discretionary review of a question certified to be of great public importance by the Florida District Court of Appeal, Fourth *881 District. Palm Beach County v. Town of Palm Beach, 426 So.2d 1063 (Fla. 4th DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The petitioners, four municipalities situated within Palm Beach County, allege that they have been subjected to "double taxation" in contravention of article VIII, section 1(h), Florida Constitution, which provides:
Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas.
Each of the petitioners challenges the use of property taxes collected by Palm Beach County which support the Palm Beach County Sheriff's road patrol and detective divisions, and also challenges the use of county-wide revenues to finance the maintenance and construction of local "nonclassified" roads in the unincorporated sections of the county. Additionally, two of the petitioners, the Town of Palm Beach and the City of West Palm Beach, dispute the use of their county-collected property taxes for the maintenance of neighborhood parks.
The trial court resolved each issue adversely to the county and held that the four challenged services do not provide a "real and substantial benefit" to the municipalities' residents or property. The Fourth District Court of Appeal reversed, finding a lack of competent substantial evidence to support the trial court's ruling and concluded that each of the services do substantially benefit the petitioners. Recognizing the need for "equitable and fair and uniform treatment under the taxing statutes," the district court certified the following question to this Court:
Whether the "real and substantial bene fits" test established by City of St. Petersburg v. Briley, Wild & Associates, 239 So.2d 817 (Fla. 1970) has been correctly interpreted and appropriately applied in this case?
426 So.2d at 1072.
The issue of county taxation of municipalities for services accruing primarily to the benefit of unincorporated areas is not one of equity and fairness. The constitutional proscription against "double taxation," article VIII, section 1(h), Florida Constitution, and indeed, the statutory prohibition, section 125.08, Florida Statutes (1981), are not framed in terms of proportionality. Each merely requires that the municipality and its residents receive a benefit which must achieve a magnitude described as "real and substantial." Briley, Wild, 239 So.2d at 823. As we have stated in the past, substantial is not necessarily a quantifiable term and a benefit may achieve substantiality without being direct or primary. All that is required is a minimum level of benefit which is not illusory, ephemeral or inconsequential. Id.; Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973); City of Ormond Beach v. County of Volusia, 383 So.2d 671 (Fla. 1973); Alsdorf v. Broward County, 373 So.2d 695 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 754 (Fla. 1980). To meet this test, it is incumbent upon the petitioners to prove a negative  that a service provided by the county and funded by county-wide revenues does not provide a real and substantial benefit to the particular municipality. Briley, Wild, 239 So.2d at 823. In any given case this will be a heavy burden, but it is by no means impossible to prove or "automatic" in the sense that the constitutional test can never be met. See, e.g., Manatee County v. Town of Longboat Key, 352 So.2d 869 (Fla. 2d DCA 1977), rev'd in part on other grounds, 365 So.2d 143 (Fla. 1978).
In the present case, the facts are essentially undisputed. Although petitioners contend that there was highly conflicting lay and expert testimony, a review of the disputed factual issues pointed to by petitioners demonstrates that it is not the facts which are contravened, but rather the legal conclusions to be drawn therefrom. For example, the petitioners state that evidence of the benefit derived by the municipality from the sheriff's backup or *882 standby capacity was in conflict at trial. It is clear to us, however, that the existence and availability of standby assistance is not disputed, nor is there any question that the backup capacity has not been widely used in the past. What is at issue is the legal conclusion to be drawn from this fact. As this Court has consistently stated, where the facts are essentially undisputed, the legal effect of the evidence will be a question of law. Uhrig v. Redding, 150 Fla. 480, 8 So.2d 4 (1942); Florida East Coast Railway v. Thompson, 93 Fla. 30, 111 So. 525 (1927).
As a further corollary to the issue of the alleged conflict in the factual evidence presented, the Court must address the propriety of admitting into evidence expert opinion testimony that the benefits conferred upon the municipalities were not "real and substantial." Petitioners argue that section 90.703, Florida Statutes (1981), permits opinion testimony on an ultimate issue to be decided by the trier of fact. See North v. State, 65 So.2d 77; 88 (Era. 1952). We agree. However, section 90.703 does not imply the admissibility of all opinions. If the witness' conclusion tells the trier of fact how to decide the case, and does not assist it in determining what has occurred, then it is inadmissible. See, e.g., United States v. Milne, 487 F.2d 1232, 1235 (5th Cir.1973).
Although the expert may testify to whether certain benefits were received by the municipality, and may, within his expertise, testify to the importance of potential or unquantified benefits, he is precluded from opining whether a particular benefit is or is not "real and substantial" within the meaning of Briley, Wild An illustration of this principle is found in Gifford v. Galaxie Homes, Inc., 223 So.2d 108, 111 (Fla. 2d DCA 1969). In Gifford an action for negligent construction, it was held proper for the duly qualified expert to respond when asked whether the premises were "constructed and maintained according to reasonably safe construction and engineering standards." Id. See also, Millar v. Tropical Gables Corp., 99 So.2d 589 (Fla. 3d DCA 1958). However, it would have been improper for the expert to assert to the trier of fact that the premises were "negligently constructed." While this is to some degree a matter of semantics, we find the distinction necessary. See Ehrhardt on Evidence, § 90.703 at 451 (West 1977). Otherwise, the trier of fact is being directed to arrive at a conclusion which it should be free to determine independently from the facts presented. We do not think that section 90.703 was intended to be so broad. See e.g., Ehrhardt, § 90.703; Feldman v. Department of Transportation, 389 So.2d 692, 694 (Fla. 4th DCA 1980).
Although the trial court has broad discretion in determining the subject on which an expert may testify, its decision will be disregarded if that discretion has been abused. Johnson v. State, 393 So.2d 1069 (Fla. 1980); Buchman v. Seaboard Coast Line Railroad, 381 So.2d 229 (Fla. 1980). In the instant case, the trial judge permitted the petitioners' expert on municipal taxation to repeatedly opine that the challenged services did not provide the requisite real and substantial benefit. That particular opinion testimony should not have been admitted or considered by the trial court.
As the district court has previously noted, any decision concerning article VIII, section 1(h) "is limited to the facts, taxable years, and circumstances of [the] particular case ..." Alsdorf v. Broward County, 373 So.2d 695, 701 (Fla. 4th DCA 1979), cert. denied, 385 So.2d 754 (Fla. 1980). Accordingly, any decisions concerning the dual taxation issue must be carefully scrutinized to ascertain the facts existing in the individual county.
At trial, petitioners presented several statistical reports and other quantifiable evidence to demonstrate that the sheriff's road patrol and detective divisions do not provide a substantial benefit to the municipalities' citizens. The reports, garnered from the sheriff's computer records, expressed in percentage form the actual assists to the city by the road patrol and *883 detective divisions as a proportion of over all municipal police activity. The only other evidence presented by petitioners was opinion testimony that the use of sheriff's patrol cars by off-duty deputies does not provide any crime-deterrence benefit to the municipalities in which the deputies reside.
Even though it is the petitioners' burden to demonstrate the absence of real and substantial benefit, and not the respondents' burden to prove the presence of any requisite benefit, the respondents present ed numerous former and present police officers who testified to benefits which are extant but non-quantifiable. For instance, the respondents presented evidence that reduction of crime in the urban unincorporated corridor between the turnpike and the municipalities' boundaries will necessarily have some spillover effect by curtailing the movement of crime into the cities. Testimony was presented concerning the ever present standby capability of the sheriff's department, which is available to assist any municipality in times of emergency or when requested. Municipal residents often travel in the unincorporated areas and thereby temporarily fall within the protective jurisdiction of the sheriff. Whenever called upon by a municipality, though historically infrequently, the sheriff's patrol and detective divisions have responded.
In addition, it is undisputed that the assist chart prepared by petitioners reflects only the minimum number of times a deputy-sheriff has entered a municipality to give aid or assistance to municipal residents. The sheriff stated that many noncrime municipal assists are likely to be unreported by deputies. The petitioners concede that the assist chart does not reflect time, money or effort expended in each assist. The evidence at trial was substantial that the majority of reported intermunicipality assists involved nonroutine matters requiring above average expenditures of deputy time, money and expertise. Finally, the quantified assist chart failed to fully account for assists such as the recovery by the sheriff's office of property stolen in a municipality.
Of course, as petitioners note, even allowing a margin of error of 100 per cent in the assist chart's numerical data, the number of assists would still remain minimal when stated as a percentage of police activity. However, the relative number of assists is not the sole issue. The constitutional question is whether the municipal residents substantially benefit from the challenged programs, and not whether the county provides proportionally significant services.
Taken independently, each of the above benefits would not be constitutionally substantial. We are, however, constrained to review the benefits delivered by the challenged services as a composite. In doing so, we find that the sheriff's road patrol and detective divisions provide not only a minimal level of direct benefit, but also a substantial degree of indirect benefit. That benefit, as a matter of law, given the geographic makeup of Palm Beach County, is sufficient to withstand the petitioners' heavy burden of proving a lack of substantial benefit. It is evident from the trial court's written decision that the trial judge did not discuss and consider many of the above benefits and failed to accord proper weight to the evidence of unquantifiable indirect and potential benefits. Whereas the constitutional test does not rest solely on quantitative benefits, the district court has correctly applied the holding of Briley, Wild to the instant case and we approve its decision on this point.
Respondent, Palm Beach County, pursuant to section 337.03, Florida Statutes (1981), has responsibility for all minor arterial roads within the county not on the state highway system, all collector roads, whether located in the municipal or unincorporated area of the county, and all local or nonclassified roads located within the unincorporated areas of the county. The petitioners challenge the use of their county-collected taxes to fund maintenance and construction of the nonclassified roads.
The entire substance of petitioners' evidence concerning these roads was that categorically a nonclassified road, because of *884 its description and unincorporated area location, could not possibly be of real and substantial benefit to the municipal residents. The expert who presented this generalized characterization testified that he did not know who used the roads, did not know the volume of traffic on any of the roads, and did not know whether property abutting the nonclassified roads was commercial or residential. The record reflects that petitioners merely identified the total road system of the county and separated it into two components  classified and nonclassified.
Palm Beach County identified at least thirteen nonclassified roads which have traffic volumes comparable to roads on the classified road system. It was stipulated that the thirteen identified roads were not intended to be all-inclusive. Although the county did not present evidence of who used the roads, it did note that the roads were not subdivision streets or shell-rock as petitioners had described all nonclassified roads. We reiterate that the petitioners must bear the burden here. The respondents are not required to prove that the existing benefits are substantial. The petitioners must prove the nonexistence or nonsubstantiality of benefits.
From the foregoing, it is clear in this uncontested factual record that the petitioners presented a paucity of evidence and failed to carry the burden of proving that local nonclassified roads do not provide a real and substantial benefit to municipal residents.
We disapprove, however, the district court's statement that a municipal petitioner must identify all roads which do not provide a substantial benefit. Palm Beach County, 426 So.2d at 1070. In this case, petitioners merely failed to identify any roads falling into the requisite category. Because we do not wish to impose a mechanical test under which municipalities may never prevail, we refrain from requiring future municipal contestants to institute expensive road-by-road examinations and user studies. Although such studies may be necessary or helpful, it is for the individual claimant to make the decision of whether such evidence will be presented. We find that the district court has correctly applied the requirements of Briley, Wild to this point.
The National Recreational and Park Association, which promulgates the park standards relied upon by the respondents' expert, defines a neighborhood park as one which consists of one to four acres of land and is located within walking distance of the intended user. There are no neighborhood parks in the Town of Palm Beach or the City of West Palm Beach, although there were at the time of trial approximately thirty neighborhood parks throughout the remainder of the county in both incorporated and unincorporated areas. Additionally, the Palm Beach County Director of Parks testified that there are no such facilities within walking distance of either municipality.
The trial court ruled that any benefits enjoyed by the municipalities' residents from county operated neighborhood parks were at best illusory. We agree. As the trial judge noted in his written judgment, the Town of Palm Beach is an island, connected to the mainland only by several bridges. Each of these bridges leads into West Palm Beach. Therefore, in order to take advantage of a neighborhood park, a resident of Palm Beach would have to leave the town, pass through a large city which has no county-funded neighborhood parks, and arrive at an ultimate destination surely not within walking distance. In addition, we think it highly unlikely that a resident of Palm Beach would bypass the facilities within the town's limits in order to recreate at a distant, moderately inaccessible park which has no facilities.
As to the City of West Palm Beach, an analogous situation arises. West Palm Beach has several large county operated nonneighborhood parks within its boundaries and maintains its own local parks. Although there may be county funded neighborhood parks in municipalities adjoining West Palm Beach, these are not within walking distance of West Palm *885 Beach residents. In order to actively and intentionally use a county operated neighborhood park, a resident of West Palm Beach would have to ignore his or her own city's local parks and bypass nearby large nonneighborhood parks with extensive recreational facilities. The few residents doing so would not raise the level of use to one of real and substantial benefit.
We find that the district court improperly required a showing of "statistical data as to park attendance, residence of park users or other relevant factors ..." Palm Beach County, 426 So.2d at 1070. Briley, Wild requires only that a municipality challenging a county levied tax prove the absence of a real and substantial benefit. Although this is a difficult burden, not every case will require extensive and costly studies. It remains for the individual petitioner to determine what evidence will be presented to the trier of fact. In the instant case, national park standards and the location of the many parks in Palm Beach County demonstrate the insignificant possibility that residents of West Palm Beach and Palm Beach will use parks that are not maintained for their benefit. This case falls directly within the confines of Briley, Wild, where we stated that:
We can conceive of services sought to be rendered by a county within a particular unincorporated area which would have no consequential benefits to the municipalities of the county, such as ... a park or recreation facility for the residents of [an unincorporated area] ...
Briley, Wild, 239 So.2d at 824.
We recognize that a city resident may visit a neighboring municipality or outlying unincorporated area and use a neighborhood park, inasmuch as such parks are available to the general public without restriction. We find, from the geographical makeup of Palm Beach County and the locations of the numerous parks, neighborhood and otherwise, that use of neighborhood parks by these two petitioners' residents is illusory, ephemeral and inconsequential, and does not rise to the magnitude required by the real and substantial benefits test.
On this point alone, we find that the district court has misapplied the test enunciated in Briley, Wild. We therefore quash the district court's determination that the petitioners did not meet their burden of proving lack of substantial benefit.
Respondents have cross-appealed on the issue of the propriety of the trial court's imposition of conditions on the otherwise automatic stay pending review. Since a determination of this issue will not affect the rights of the parties, and the issue is not one involving the general public interest, the question need not be addressed. See State v. Kinner, 398 So.2d 1360, 1362 (Fla. 1981).
For the foregoing reasons, the certified question is answered in the affirmative as to the sheriff's road patrol, detective divisions, and nonclassified roads, and answered in the negative as to the neighborhood parks. We remand this cause to the district court with instruction that it be further remanded to the trial court for proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion, in which ALDERMAN, J., concurs.
BOYD, Chief Justice, concurring in part and dissenting in part.
I concur with those portions of the majority opinion that reject the argument of the municipalities that certain county services, financed by county-wide taxation, are benefitting only residents in the unincorporated areas of the county. I dissent from that portion of the majority opinion that holds that certain county-financed "neighborhood parks" in unincorporated locations benefit only the residents of unincorporated areas in violation of the state constitutional right of residents of municipalities in the county.
*886 The sheriff of a county in Florida is the sheriff for all the people of the county. The fact that municipalities may organize police forces to provide their residents with additional law enforcement services does not relieve municipal residents of the obligation of paying county taxes to finance the operation of the sheriff's office. The sheriff is accountable to the voters for the use of the resources entrusted to the office. Similarly, county-maintained roads in unincorporated areas are available for use by everyone. Favoritism toward one area of the county at the expense of another can be remedied through the political process.
Regarding the issue of "neighborhood parks," I believe the record shows that such parks are available for use and enjoyment by anyone who happens to be in the area, including county residents, city residents, and travellers from other areas. They are an amenity provided by the whole county community for use by the whole county community. Even if, as the majority finds, it is unlikely that city residents would use the neighborhood parks in question, their existence and maintenance in those neighborhoods serves the interest of and benefits all the residents of the entire county, both in and out of the incorporated areas. Palm Beach County is a metropolitan community in which the need for urban services and amenities serving the whole community does not stop at municipal boundary lines.
I would answer the certified question in the affirmative as to all issues and approve the district court decision in its entirety.
ALDERMAN, J., concurs.