Ms. Joann G. Slay Attorney for Gadsden County Post Office Box 300 Quincy, Florida 32351
Dear Ms. Slay:
You ask on behalf of the county commission substantially the following question:
May the county appropriate, through the budget process, money from the general revenue fund to offset a shortfall in revenues received from the mandatory garbage collection program in the unincorporated areas of the county?
In sum, I am of the opinion:
While the collection of waste, thereby eliminating a source of pollution, may well constitute a substantial benefit to the incorporated areas, such a determination involves questions of fact and mixed questions of law and fact which the county commission must address. Similarly, while the provision of waste collection services constitutes a public purpose for which public funds may be expended, the legislative findings and determination as to the propriety of a particular expenditure is one which the county commission must make, and cannot be delegated to this office.
According to your letter, Gadsden County has adopted a mandatory waste collection ordinance which requires the owner of each occupied structure in the unincorporated area of the county to pay a fee for waste collection to the county. Part of the fees are used to pay the waste collector who performs the services on behalf of the county pursuant to contract; part of the fees are retained by the county to defray landfill costs.
Garbage collection services are provided to the unincorporated areas only. You ask whether the county may use funds in the general revenue fund which consists of ad valorem revenues as well as non ad valorem funds to cover any deficits in the program.[1]
You state that the funds used for the shortfall have not been raised for a particular purpose.[2]
Section 1(h), Art. VIII, State Const., provides:
Property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas.[3]
The courts have interpreted the above provision as preventing the taxation of property within a municipality to pay "for services from which the owners of said property received no real or substantial benefit."[4] It is not necessary, however, that the benefit to the municipality be direct and primary, only that it be real and substantial.[5] As stated by The Supreme Court of Florida:[6]
[S]ubstantial is not necessarily a quantifiable term and a benefit may achieve substantiality without being direct or primary. All that is required is a minimum level of benefit which is not illusory, ephemeral or inconsequential. . . . To meet this test, it is incumbent upon the petitioners to prove a negative — that a service provided by the county and funded by county-wide revenues does not provide real and substantial benefit to the particular municipality.[7] (e.s.)
In considering the proscription in s. 1(h), Art. VIII, supra, The Supreme Court of Florida in City of St. Petersburg v. Briley, Wild Associates, Inc.,[8] held that the construction of a sewer treatment plant and the accompanying reduction in pollution from open sewage discharge was a sufficient benefit to authorize the use of countywide tax moneys to finance the facility even though certain municipalities within the county would not actually use the facilities.
It is unrealistic to say that the elimination of pollution and contamination of the soils, waters and streams of the unincorporated areas of [the county] will not be of substantial benefit, healthwise and recreation-wise, to the incorporated areas.
We can conceive of services sought to be rendered by a county within a particular unincorporated area which would have no consequential benefits to the municipalities of the county such as, for instance, a library set up in an unincorporated area for the use and benefit of the area residents or, perhaps, a park or recreation facility for the residents of such area. . . . But, in the field of public health a different situation may readily exist.[9]
Thus, in order to comply with s. 1(h), Art. VIII, State Const., county funds obtained in part by taxing property within a muni-cipality situated in the county — which would include moneys in the county's general fund[10] — could not be used to fund waste collection services in the unincorporated areas of the county exclusively unless the provision of such services substantially benefitted the municipality.
The courts have stated, however, that resolution of this constitutional question is substantially a factual determination which can only be made after consideration of the geographical and developmental characteristics of the county and other special circumstances which may be relevant.[11] In light of the Court's decision in City of St. Petersburg v. Briley, Wild Associates, Inc., supra, it would appear that the collection of waste, there-by eliminating a source of pollution, may well constitute a substantial benefit to the incorporated areas. Such a determination, however, involving mixed questions of law and fact, is one which the county commission must make.[12]
Similarly, the determination as to whether the expenditure of county funds to fund a shortfall in the waste collection program caused by certain citizens' refusal to pay, must be made by the county commission. You state that the appropriation from the general revenue fund is "to act as a cushion in the event of some non-payment [of waste collection fees] by owners." While the nonpaying owners are being sued for such fees, some of the suits may result in noncollectible judgments, thereby resulting in a shortfall in the waste collection program.
The issue as to whether public funds may be expended to fund the shortfall due to the nonpayment of waste collection fees by certain individuals turns on the primary purpose for such an expenditure. Section 10, Art. VII, State Const., prohibits the state or counties, municipalities, or any agency thereof, from using, giving, or lending its taxing power or credit to aid any private interest or individual.
The purpose of the constitutional provision is to protect public funds and resources from being exploited in assisting or promoting private ventures when the public would at most only be incidentally benefitted.[13] However, if the paramount purpose of a public expenditure is a public purpose, the fact that the expenditure may also incidentally benefit private individuals does not violate s. 10, Art. VII, State Const.
The Legislature has recognized that the provision of waste collection by a county serves a county purpose. Pursuant to s.125.01(1)(k), F.S., the governing body of the county is expressly authorized to provide and regulate waste and sewer collection and disposal in the county.[14]
Accordingly, I am of the opinion that pursuant to the county's home rule powers[15] and based upon appropriate legislative findings, it is a matter of legislative judgment of the county commission whether to expend public funds to fund the shortfall in the county's waste collection program. Such a determination must be made by the county commission and cannot be delegated to this office.[16]
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] It does not appear the county has established a municipal service taxing unit pursuant to s. 125.01(1)(q)1., F.S. Pursuant to that subsection, a county is authorized to establish such a unit to provide, among other things, garbage and trash collection and disposal and waste and sewer collection and disposal from funds "derived from service charges, special assessments, or taxes within such unit only." (e.s.)
[2] Cf., Supreme Forest Woodmen Circle v. Hobe Sound Co.,189 So. 249, 250 (Fla. 1939); Oven v. Ausley, 143 So. 588, 589 (Fla. 1932), AGO's 86-39 and 83-44 (funds raised by taxation for one purpose cannot be diverted to some other purpose without legislative authority).
[3] And see, s. 125.01(7), F.S., stating:
No county revenues, except those derived specifically from or on behalf of a municipal service taxing unit, special district, unincorporated area, service area, or program area, shall be used to fund any service or project provided by the county when no real and substantial benefit accrues to the property or residents within a municipality or municipalities.
[4] See, City of St. Petersburg v. Briley, Wild Associates, Inc., 239 So.2d 817, 822 (Fla. 1970), cited with approval in Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 880-881 (Fla. 1984).
[5] See, City of St. Petersburg v. Briley, Wild Associates, Inc., supra at 823.
[6] Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 881
(Fla. 1984).
[7] And see, Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973); City of Ormond Beach v. County of Volusia, 383 So.2d 671 (5 D.C.A. Fla., 1980); Alsdorf v. Broward County, 373 So.2d 695, 698 (4 D.C.A. Fla., 1979), cert. denied, 385 So.2d 754 (Fla. 1980) (benefit to city need not be direct and primary, it is only necessary that the benefit not be illusory or inconsequential).
[8] 239 So.2d 817 (Fla. 1970).
[9] 239 So.2d at 824.
[10] Section 129.02(1), F.S.
[11] See, Alsdorf v. Broward County, supra at 701, cited with approval by The Supreme Court of Florida in Town of Palm Beach v. Palm Beach County, supra at 882, stating that any decision concerning s. 1(h), Art. VIII, State Const., is "limited to the facts, taxable years, and circumstances of [the] particular case . . . ."
[12] See, this office's Statement Concerning Attorney General Opinions:
Attorney General Opinions are intended to address only questions of law, not questions of fact, mixed questions of fact and law, or questions of executive, legislative or administrative policy.
And see, s. 125.01(6)(a), F.S., which provides:
The governing body of a municipality . . . by resolution, or the citizens of a municipality or county by petition of 10 percent of the qualified electors of such unit, may identify a service or program rendered specially for the benefit of the property or residents in unincorporated areas and financed by from countywide revenues and petition the board of county commissioners to develop an appropriate mechanism to finance such activity for the ensuing fiscal year, which may be by taxes, special assessments, or service charges levied or imposed solely upon residents or property in the unincorporated area, by the establishment of a municipal service taxing or benefit unit pursuant to paragraph (1)(q), or by remitting the identified cost of service paid from revenues required to be expended on a countywide basis to the municipality . . . within 6 months of the adoption of the county budget, in the proportion that the amount of county ad valorem taxes collected within such municipality . . . bears to the total amount of countywide ad valorem taxes collected by the county, or by any other method prescribed by state law.
Paragraph (6)(b) of the statute requires the board of county commissioners to file within 90 days a response to such petition. The response must either reflect action to develop the appropriate mechanisms or reject the petition and state findings of fact demonstrating that the service does not specially benefit the property or residents of the unincorporated areas.
[13] See, Bannon v. Port of Palm Beach District, 246 So.2d 737
(Fla. 1971).
[14] And see, Waste Aid Systems, Inc. v. Citrus County, Florida613 F. Supp. 102 (1985) discussing the public purpose underlying the county's landfill; s. 125.01(1)(q), F.S., authorizing the county to create municipal service taxing unit for the provision of, among other things, garbage collection, such services to be funded by special assessments, service charges or taxes within the district.
[15] See, s. 125.01, F.S.