DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JD DUFF** a/k/a **JONATHAN DUFF, LUCAS SMITH,
THE SCUBA CLUB OF PALM BEACH,** and **JD DUFF, LLC,**
Appellants,

v.

**GILLIAN RACINE,** as personal representative of the
**ESTATE OF ALEXIS NICOLE RACINE,**
Appellee.

No. 4D2024-2651

[June 11, 2025]

Appeal of nonfinal order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Luis Delgado, Jr., Judge; L.T. Case No. 50-2023-CA-006973-XXXX-MB.

Kimberly Kanoff Berman of Marshall Dennehey, P.C., Fort Lauderdale, for appellants.

Gray R. Proctor, Somerville, New Jersey, for appellee.

PER CURIAM.

JD Duff a/k/a Jonathan Duff, Lucas Smith, The Scuba Club of Palm Beach, and JD Duff, LLC, the defendants in the underlying wrongful death case, appeal the trial court's order granting the plaintiff estate's motion for leave to amend to assert punitive damages claims. For the reasons discussed below, we reverse.

## Background

The plaintiff is the estate of a woman who drowned while scuba diving on a chartered tour. Briefly, two diving guides led a group of six divers, including the decedent, to tour a series of shipwrecks. The decedent became separated from the group at some point during the dive and was later found unresponsive on the ocean floor. The dive master brought the decedent back to the boat and performed CPR, but she later died at the hospital. The decedent tested positive for alcohol and several illicit drugs following her death.

The decedent's estate sued JD Duff a/k/a Jonathan Duff ("Duff"), the boat captain; Lucas Smith ("Smith"), the dive master; JD Duff, LLC, the boat owner; and The Scuba Club of Palm Beach, LLC, the tour operator. JD Duff was an owner and manager of both LLCs. The original complaint asserted wrongful death claims against all four defendants on the basis that they had breached their duty of care to the decedent by, among other things, failing to adhere to a one-on-one "buddy system" and failing to closely monitor the decedent during the dive even though she had been exhibiting "unusual actions."

The estate later moved for leave to amend the complaint to assert gross negligence and punitive damages claims against all four defendants. In its proposed amended complaint, the estate alleged that defendants Duff and Smith were grossly negligent for failing to use the buddy system and for allowing the decedent to dive when they knew or should have known that she was intoxicated. The estate additionally alleged defendant Smith was grossly negligent for allowing the decedent out of his eyesight for four to ten minutes during the dive despite having identified the decedent as requiring "special assistance." As to the LLC defendants, the estate alleged they were grossly negligent "by and through" defendant Duff as their owner and manager.

The estate primarily relied on defendant Smith's police statement and deposition testimony to support its allegations of gross negligence warranting punitive damages. Regarding the tour company's general practices, defendant Smith stated the diving guides and tour participants are to stay together in a group rather than follow a one-on-one buddy system. Defendant Smith leads the group as the dive master, and the second guide stays toward the back of the group to "keep everybody together." The tour participants are instructed to go back to the surface if they find themselves alone.

Regarding what occurred on the day of the incident, defendant Smith testified that before the dive, he had identified the decedent as a person who might need some "extra help" as she had not been diving in about four months. Defendant Smith also noticed the decedent seemed "a little off" during the pre-dive instructions, but he thought it was just "her personality" and had no reason to believe she was intoxicated. The decedent initially entered the water without wearing her regulator, but defendant Smith fixed the issue, and the decedent twice signaled she was okay. About six minutes into the dive, defendant Smith noticed the decedent was missing from the group, along with the second guide and two other divers. Defendant Smith assumed they had been carried away

2

by the current but were together and would catch up with the rest of the group at the next spot on the tour. About four minutes later, defendant Smith noticed the decedent on the ocean floor about fifty to sixty yards from the place he had last seen her. Defendant Smith brought the decedent back to the boat and performed CPR. The decedent was aspirating fluids into her lungs, and defendant Smith said in his police interview that "it almost smelled like alcohol coming off of her." In his deposition, defendant Smith later clarified that he thought he was smelling bodily fluids coming from the decedent's lungs, not alcohol. Specifically, he thought the decedent might have been diabetic and suffering from acidosis. Defendant Smith reiterated that he never had any reason to believe the decedent was intoxicated.

The estate also submitted an affidavit from Captain Christoper Karentz, who identified himself as a "senior maritime consultant." Captain Karentz stated he reviewed the evidence in the case and was familiar with the relevant standards of care. Captain Karentz opined the following actions constituted gross negligence: allowing an intoxicated person to dive; allowing a diver who had been identified as requiring special assistance out of eyesight for four to ten minutes; and not using the "industry standard" buddy system.

In response, the defendants argued the evidence was insufficient to support a finding of gross negligence warranting punitive damages. In support, the defendants pointed to the deposition testimony of defendant Duff and a number of other witnesses who were onboard the boat before the decedent's dive. The witnesses testified generally that the decedent seemed "anxious" or "jittery," but none of the witnesses had any reason to believe the decedent was intoxicated. Defendant Duff, who knew the decedent, testified she was always "a little bit up there" or "spacey." According to defendant Duff, the decedent was not exhibiting any behavior on the day of the incident that was unusual for the decedent.

At the hearing on the estate's motion, the trial court repeatedly stated that the pleading standard "is very liberal," and the estate is "allowed to draft their complaint the way they want to." The trial court also stated the defendants were "put[ting] the cart before the horse" by bringing up evidentiary issues before the summary judgment stage. Notably, in granting the estate's motion, the trial court made no affirmative finding that the estate had made a reasonable showing by evidence which would provide a reasonable evidentiary basis for recovering punitive damages. This appeal follows.

## Analysis

An order granting a motion for leave to assert a claim for punitive damages is reviewed de novo. *Fed. Ins. Co. v. Perlmutter*, 376 So. 3d 24, 34 (Fla. 4th DCA 2023).

It is well established that, "[i]n any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2024).

In considering a motion for leave to assert a claim for punitive damages, the trial court must conduct a two-step inquiry. *Vaziri v. Jerkins*, 400 So. 3d 634, 637 (Fla. 4th DCA 2025). "First, the court must determine whether the proposed amended complaint contains sufficient allegations to support a punitive damages claim." *Id.* "Second, if the allegations in the proposed amended complaint are sufficient, the court then must consider whether the plaintiff has established a reasonable evidentiary basis for recovering punitive damages consistent with those allegations." *Id.* If the trial court is to grant the motion, the court must make an affirmative finding that the necessary evidentiary showing has been made. *Id.*; *see also Leinberger v. Magee*, 226 So. 3d 899, 901 (Fla. 4th DCA 2017).

We reverse the order granting the estate's motion for leave to assert claims for punitive damages for three reasons. First, the trial court applied the wrong legal standard in granting the motion. Specifically, the trial court applied the general, liberal pleading standard rather than the heightened standard required by section 768.72, Florida Statutes (2024). *See Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005) ("Punitive damage amendments are different than traditional amendments in that section 768.72 has created a substantive legal right not to be subject to a punitive damage claim until the trial court rules that there is a reasonable evidentiary basis for punitive damages."). In doing so, the trial court failed to fulfill its role as a gatekeeper and evaluate whether the evidence was sufficient to support the estate's allegations of gross negligence. *See Vaziri*, 400 So. 3d at 637; *Perlmutter*, 376 So. 3d at 31–32; *see also Bistline v. Rogers*, 215 So. 3d 607, 610–11 (Fla. 4th DCA 2017) (recognizing that the trial court must evaluate the sufficiency of the evidence and cannot simply accept the plaintiff's allegations as true). To further compound the error, because the trial court applied the wrong pleading standard, the court also failed to make an affirmative finding that the estate's proffered evidence established a reasonable basis for recovery of punitive damages. *See Vaziri*, 400 So. 3d at 638.

4

Second, as to defendants Duff and Smith, the estate failed to present sufficient evidence to establish a reasonable basis for recovery of punitive damages. To support its claims of gross negligence, the estate was required to show that defendants Duff and Smith's "conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat. (2024); *see also Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016) ("[T]he required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter."). To that end, the proposed amended complaint alleged defendants Duff and Smith were grossly negligent in three respects: (1) failing to use the "industry standard" buddy system; (2) allowing the decedent out of eyesight for four to ten minutes during the dive despite having identified her as requiring "special assistance;" and (3) allowing the decedent to dive while intoxicated.

As to the first two allegations, the evidence establishes, at best, ordinary breaches of the professional standards of care, not the heightened culpability required to support a claim for punitive damages. *See Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) ("Allegations of misfeasance or malfeasance, or breaches of a professional standard of care, cannot without more be converted into a claim for punitive damages simply by labelling them as 'grossly' negligent."). Captain Karentz's conclusory statements that the alleged breaches constituted gross negligence invaded the province of the factfinder and were insufficient to provide evidentiary support to the estate's allegations. *See Town of Palm Beach v. Palm Beach Cnty.*, 460 So. 2d 879, 882 (Fla. 1984); *Smith v. Martin*, 707 So. 2d 924, 925 (Fla. 4th DCA 1998). As to the third allegation, even if we were to accept that allowing the decedent to dive while intoxicated constituted gross negligence, the evidence does not support the estate's allegation that defendants Duff and Smith knew or should have known the decedent was intoxicated. As reflected by the witnesses' deposition testimony, including the testimony of defendants Duff and Smith, although the decedent seemed "a little off" and "anxious" before the dive, none of the witnesses had any reason to believe she was intoxicated. In fact, defendant Duff testified he knew the decedent, and nothing about her behavior that day was unusual for the decedent. Moreover, to the extent the estate relied on defendant Smith's statement that he noticed an alcohol-like smell coming from the decedent while he was performing CPR, that statement does not tend to prove defendant Smith knew or should have known the decedent was intoxicated *before* the dive.

5

Third, as to the LLC defendants, the proposed amended complaint's allegations were insufficient to support a punitive damages claim based on a vicarious liability theory. A corporate entity, like the LLC defendants here, may be held vicariously liable for punitive damages based on the conduct of an employee or agent only if: (1) the conduct of the employee or agent meets the criteria for intentional misconduct or gross negligence under section 768.72(2); and (2) the corporate entity either actively and knowingly participated in the conduct, knowingly condoned, ratified, or consented to the conduct, and/or engaged in conduct that constituted gross negligence. § 768.72(3), Fla. Stat. (2024).

Here, the estate's proposed amended complaint alleged the LLC defendants were grossly negligent "by and through" defendant Duff, as their owner and manager, for failing to use the "industry standard" buddy system and for allowing the decedent to dive while intoxicated. These allegations were insufficient to support a punitive damages claim based on a vicarious liability theory, as the estate did not allege any conduct by the LLC defendants. Instead, by alleging the LLC defendants were grossly negligent "by and through" defendant Duff, the estate seemingly relied on general common law rules of agency and vicarious liability rather than the heightened standards required by section 768.72, Florida Statutes (2024). *See HCA Health Servs. of Fla., Inc. v. Byers-McPheeters*, 201 So. 3d 669, 670 (Fla. 4th DCA 2016) ("Under section 768.72(3), the legislature established a heightened standard for imposing punitive damages on an employer rather than adopting the common law rules of agency and vicarious liability."). Moreover, as explained above, even if the estate had alleged separate conduct by the LLC defendants, the evidence was insufficient to demonstrate defendant Duff's conduct constituted gross negligence.[1]

Accordingly, we reverse the trial court's order granting the estate's motion for leave to assert punitive damages claims, and remand for further proceedings consistent with this opinion.

*Reversed and remanded for further proceedings.*

---

[1] The estate also argues on appeal that the LLC defendants can be held vicariously liable for punitive damages based on defendant Smith's conduct. However, that theory was not pled in the proposed amended complaint, and the estate failed to show that defendant Smith was an employee or agent of the LLC defendants or that his conduct constituted gross negligence. *See Perlmutter*, 376 So. 3d at 32 ("If the evidentiary showing does not match the amended complaint's allegations, the trial court should not permit the punitive damages claim.").

WARNER, MAY and DAMOORGIAN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***