630 So.2d 646 (1994)
Michael KEY, D.O., Appellant,
v.
Roland Pierre ANGRAND, as Personal Representative of the Estate of Carolyn Angrand, and John Whyms, surviving son of Carolyn Angrand, Appellees.
Nos. 92-167, 91-2918.
District Court of Appeal of Florida, Third District.
January 11, 1994.
*647 Hicks, Anderson & Blum, Miami, and Alyssa Reiter, Fort Lauderdale, for appellant.
Perse & Ginsberg and Arnold R. Ginsberg, Daryl L. Merl, Miami, for appellees.
Before HUBBART, COPE and GERSTEN, JJ.
COPE, Judge.
Dr. Michael Key appeals a final judgment in a medical malpractice case. We reverse.
The decedent, Carolyn Angrand, was under the care of her family physicians, Dr. Morry Fox and Dr. Susan Fox, during her pregnancy. Because of her medical history, she was a high-risk patient.
On two occasions the Foxes took an ultrasound and sent them to Dr. Key, a radiologist, for interpretation. After the second ultrasound, Dr. Key reported to the Foxes that the film showed a single, live intrauterine fetus. In reality, the patient had an interstitial ectopic pregnancy. One month after the second ultrasound, there was a rupture which resulted in the death of Ms. Angrand.
Roland Angrand, decedent's husband and personal representative,[1] brought an action against the Foxes and Dr. Key (among others), alleging medical malpractice for failure to diagnose the ectopic pregnancy. Dr. Susan Fox was dismissed from the case in 1986. The claims against Dr. Morry Fox were settled prior to trial. The case proceeded to trial against Dr. Key. From a verdict in favor of the estate, Dr. Key appeals.
Dr. Key contends that the trial court erred by excluding the testimony of the Foxes under the Deadperson's Statute, section 90.602, Florida Statutes (1991). Although Dr. Key is correct, in our view this point is not preserved for appellate review. Because we reverse on other grounds, however, this issue will arise again on remand. Consequently, we review the applicable principles.
In this case Dr. Key had asserted the defense of comparative negligence. He contended that the decedent had failed to follow certain instructions given to her by her treating *648 physicians, the Foxes. He called the Foxes to testify at trial.
Plaintiffs moved in limine to exclude the testimony of the Foxes under the Deadperson's Statute. The motion in limine recites that the Foxes were prior defendants in the lawsuit, and that the claims against the Foxes were no longer pending. The plaintiffs contended that as prior defendants in the action, the Foxes were "interested" in the action within the meaning of the Deadperson's Statute. The trial court accepted the argument and excluded their testimony.
The Deadperson's Statute provides, in part:
(1) No person interested in an action or proceeding against the personal representative, heir at law, assignee, legatee, devisee, or survivor of a deceased person ... shall be examined as a witness regarding any oral communication between the interested person and the person who is deceased . .. at the time of the examination.
Id. § 90.602(1) (emphasis added).[2] The burden rests on the objecting party to show that the Deadperson's Statute is applicable. Hackmann v. Hyland, 445 So.2d 1079, 1080 (Fla. 3d DCA 1984).
In Proprietors Insurance Co. v. Valsecchi, 435 So.2d 290 (Fla. 3d DCA 1983), this court stated:
"The test of the interest of a witness ... is whether he will gain or lose by the direct legal operation and effect of the judgment, or whether the record in the case will be legal evidence for or against him in some other legal action. It must be a present and vested interest and not one uncertain, remote, or contingent."
Id. at 297 (quoting Parker v. Priestley, 39 So.2d 210, 213 (Fla. 1949) (emphasis added)), review denied, 449 So.2d 265 (Fla. 1984). "The test is not whether the witness was interested at some time prior to the trial or may receive a benefit sometime in the future." Charles W. Ehrhardt, Florida Evidence § 602.1, at 333-34 (1993 ed.).
Under the cited authorities, the Foxes' status as past defendants in the case did not render them "interested" for purposes of the statute. The trial court erred by granting the motion in limine and ordering the exclusion of the Foxes' oral communications with decedent.[3],[4]
We do not reverse on this point, however, because there was no offer of proof of the substance of the Foxes' testimony, nor was the substance of the proposed testimony otherwise apparent.
The Evidence Code provides, in part: 90.104 Rulings on Evidence. 
(1) A court may predicate error, set aside or reverse a judgment, or grant a new trial on the basis of admitted or excluded evidence when a substantial right of the party is adversely affected and:
... .
(b) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked.

... .
(3) Nothing in this section shall preclude a court from taking notice of fundamental *649 errors affecting substantial rights, even though such errors were not brought to the attention of the trial judge.
(Emphasis added). See generally Charles W. Ehrhardt, Florida Evidence § 104.3.[5] The ruling below was one which excluded evidence within the meaning of section 90.104. Accordingly, an offer of proof was required.
Dr. Key argues that no proffer is necessary where evidence is excluded under the Deadperson's Statute. For that proposition he relies on the pre-Evidence Code case of In re Estate of Lynagh, 177 So.2d 256, 258 (Fla. 2d DCA 1965), which in turn cites Seeba v. Bowden, 86 So.2d 432 (Fla. 1956). The Evidence Code has been enacted since those cases were decided, and section 90.104 is now controlling to the extent of any inconsistency. Section 90.104 requires an offer of proof, subject to certain exceptions not applicable here. If we were to adopt Dr. Key's position, it would mean that any erroneous exclusion of evidence under the Deadperson's Statute would result in an automatic reversal, even if the excluded evidence was irrelevant or inconsequential. We can see no sound reason for such a rule, and the terms of the Evidence Code are to the contrary.
Dr. Key argues, however, that one post-Evidence Code decision supports his position, Wright v. Schulte, 441 So.2d 660 (Fla. 2d DCA 1983), review denied, 450 So.2d 488 (Fla. 1984). Wright was a medical malpractice case in which the trial court erroneously excluded the plaintiff's expert as being unqualified. The appellate court held that reversal was appropriate even though the plaintiff had not proffered the expert's testimony. In so ruling, the court said "[s]uch a proffer is not necessary in cases where the proffer would be a useless ceremony or where the court indicates that such offer would be unavailing or that the witness is incompetent. Seeba v. Bowden, 86 So.2d 432 (Fla. 1956); § 90.104(1)(b)." Wright v. Schulte, 441 So.2d at 663.[6]
Dr. Key reads Wright to hold that no proffer is necessary where a witness is held to be incompetent. He argues that an exclusion of testimony under the Deadperson's Statute is a determination that the witness is incompetent. He reasons that under the rule stated in Wright, no proffer was necessary.
In our view Wright's reference to a finding that the witness is incompetent is dictum. Wright specifically cites the Evidence Code  paragraph 90.104(1)(b), Florida Statutes  in support of its decision. Under that portion of the Evidence Code, an offer of proof is unnecessary where the substance of the evidence "was apparent from the context within which the questions were asked." Id. The Wright opinion reflects that the record was developed at length as to the plaintiff's expert's qualifications to render an opinion that the defendant surgeon had departed from the standard of care by negligently cutting and suturing the patient's ureter while performing a hysterectomy. It is a fair inference that in Wright the substance of the excluded opinion of the plaintiff's medical malpractice expert sufficiently appeared on the face of the record, so as to render a more detailed proffer unnecessary. For that reason the court explicitly relied on paragraph 90.104(1)(b). We therefore conclude that the reference to incompetency of the witness is dictum under the facts of Wright.
In the present case, we hold that the Evidence Code provision is controlling. Section 90.104 required a proffer of the excluded testimony. Since that was not done, the point is not preserved for appellate review.
The next issue involves the testimony of an expert who was allowed to testify as to the extent and progress of the survivors' grief after the death of Mrs. Angrand. Key contends that the testimony was not helpful to the jury and was unfairly prejudicial.
Section 90.702, Florida Statutes (1991), states:
If scientific, technical, or other specialized knowledge will assist the trier of fact in *650 understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
See also Fla.R.Civ.P. 1.390(a).
The expert in this case has a doctorate in sociology with extensive additional education in the area of bereavement and grief. He has written or coauthored five books on the subject, as well as numerous articles, and has presented papers to professional groups. He provides training to counselors, therapists, nurses, social workers and physicians.
By qualifications, the witness met the definition of expert as set out in section 90.702 and Florida Rule of Civil Procedure 1.390(a). According to Professor Ehrhardt, "the appropriate question for the court to determine is whether the witness has sufficient knowledge, training or education to render the opinion expressed." Charles W. Ehrhardt, Florida Evidence § 702.1, at 492. We find no abuse of discretion in the trial court's determination that the witness was qualified to express an expert opinion. See Ramirez v. State, 542 So.2d 352, 355 (Fla. 1989) ("The determination of a witness's qualifications to express an expert opinion is peculiarly within the discretion of the trial judge, whose decision will not be reversed absent a clear showing of error.").
That the witness was qualified to testify as an expert does not end our inquiry, however. The Evidence Code also requires that the specialized knowledge must be such that it "will assist the trier of fact in understanding the evidence or in determining a fact in issue... ." Section 90.702, Fla. Stat. (1991). "In order to be admissible, expert testimony must concern a subject which is beyond the common understanding of the average [person] and is such as will probably aid the triers of fact in their search for truth." Florida Power Corp. v. Barron, 481 So.2d 1309, 1310 (Fla. 2d DCA) (citations omitted), review dismissed, 488 So.2d 829 (Fla. 1986); see also Buchman v. Seaboard Coast Line Railroad Co., 381 So.2d 229, 230 (Fla. 1980); La Villarena, Inc. v. Acosta, 597 So.2d 336, 339 (Fla. 3d DCA 1992); Adamo v. Manatee Condominium, Inc., 548 So.2d 287, 288-91 (Fla. 3d DCA 1989) (Barkdull, J., specially concurring). Moreover, the expert testimony should not be admitted if there is a "substantial danger of unfair prejudice outweighing its probative value." La Villarena, Inc. v. Acosta, 597 So.2d at 339; accord § 90.403, Fla. Stat. (1991).
We conclude that the testimony of the grief expert should not have been admitted. Review of the trial transcript shows that the expert in this case did not testify as to anything that was outside of the common experience, or common sense, of the jury, most of whom had also experienced the death of a loved one in the past.[7] It is self-evident that grief is a profound and difficult experience which takes a long time to overcome; that different people handle their grief in different ways and on different timetables; and that the closer the relationship, the deeper the sense of loss experienced by the survivors. The expert added nothing beyond what the survivors themselves, their minister and other family members testified to as to the close relationship Mrs. Angrand had with her husband and son and the loss felt by them after her death.
In our view the testimony was unfairly prejudicial because of the possibility that the jury would give such testimony, coming as it did from an expert, undue weight. As one court put it,
Because the importance and validity of the testimony of an expert witness are increased in the mind of the jury, allowing an expert witness to testify to matters of common understanding creates the possibility that the jury will forego independent analysis of the facts when it does not need assistance in making that analysis. This is particularly true when there are no unusual or complicated circumstances surrounding *651 the incident about which the expert testifies.
Florida Power Corp. v. Barron, 481 So.2d at 1310-11. The expert testimony, when added to the lay testimony, tended to make griefrelated testimony a feature of the trial.
Generally, a trial court has broad discretion in determining the subjects on which an expert may testify and its decision will only be disregarded if that discretion has been abused. Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 882 (Fla. 1984). In this case, however, it is clear that the trial court understood that it had no discretion to refuse to allow the expert to testify. The court was presented with Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA), review dismissed, 589 So.2d 291 (Fla. 1991), a case not only directly on point, but also involving the same expert. The trial court admitted that while it was surprised to find an appellate decision holding that the subject of bereavement and grief is not within the normal, everyday comprehension of jurors, it "was stuck with it." The trial court was correct. "[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts." Pardo v. State, 596 So.2d 665, 666 (Fla. 1992). Now, however, we respectfully decline to follow the fourth district's decision in Shelburne on the subject of expert testimony on survivor grief.
Because of the prejudicial nature of the testimony and the heavy emphasis given this issue at trial, we reverse and remand for a new trial on liability and damages. We certify direct conflict with so much of Holiday Inns, Inc. v. Shelburne as allows the use of expert testimony to explain survivor grief to members of a jury.[8]
Reversed and remanded for new trial;[9] conflict certified.
NOTES
[1] John Whyms, the surviving son of Carolyn Angrand, was an additional plaintiff.
[2] The statute excludes oral communications but does not bar testimony about other matters. Charles W. Ehrhardt, Florida Evidence § 602.1, at 329-30 (1993 ed.) The statute enumerates several exceptions. § 90.602(2), Fla. Stat. (1991).
[3] Plaintiffs also argued their belief that there was a separate pending suit against Dr. Morry Fox and Dr. Key. Defendant offered to swear in Dr. Key to testify that no such lawsuit existed. Believing that the Foxes' status as former defendants was sufficient to render them "interested" under the statute, the trial court declined to explore the issue of a separate suit, and granted the motion in limine.

It was in any event the plaintiffs' burden to establish the existence of the second pending lawsuit so as to bring the case within the rule summarized in Proprietors Insurance Co. v. Valsecchi. The written motion in limine makes no mention of any such suit, and counsel's unsupported belief fell short of the necessary showing.
[4] Because the Foxes were not "interested" witnesses within the meaning of the statute, we need not explore the question whether the plaintiffs' case of necessity waived the protection of the statute pursuant to paragraph 90.602(2)(b).
[5] An offer of proof may be made by calling the witness to testify out of the presence of the jury, or by oral or written proffer by counsel. See id. § 104.3, at 16.
[6] The quoted sentence is a paraphrase of Seeba v. Bowden, 86 So.2d at 434.
[7] Indeed, the expert acknowledged that lay people understand grief quite well; he simply makes them aware of the details of the experience. The expert was not a counselor or treating professional who provided any treatment to the survivors in this case.
[8] Dr. Key also contends that he was entitled to a directed verdict on liability. As we view the record, there was a jury question on liability and the motion was correctly denied.
[9] The corresponding cost judgment, which is the subject of (consolidated) appeal no. 92-167, is vacated.