657 So.2d 1146 (1995)
Roland Pierre ANGRAND, Petitioner,
v.
Michael KEY, Respondent.
No. 83154.
Supreme Court of Florida.
June 22, 1995.
*1147 Arnold R. Ginsberg of Perse, P.A. & Ginsberg, P.A., and Daryl L. Merl, P.A., Miami, for petitioner.
Bonnie Eyler of Santone, Eyler & Lury, P.A., Boca Raton, and Alyssa Campbell of Hicks, Anderson & Blum, P.A., Miami, for respondent.
WELLS, Justice.
We have for review Key v. Angrand, 630 So.2d 646 (Fla. 3d DCA 1994), which expressly and directly conflicts with the opinion in Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA), review dismissed, 589 So.2d 291 (Fla. 1991). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Dr. Morry Fox and Dr. Susan Fox provided Carolyn Angrand with medical care during her pregnancy. The Foxes sent two of Mrs. Angrand's sonograms to Dr. Michael Key, a radiologist, for interpretation. After reviewing the second sonogram, Dr. Key reported a normal single intrauterine fetus. The fetus was actually interstitial, or located in the portion of the uterus which connects to the fallopian tube. Consequently, when the fetus grew to a certain size, the fallopian tube and the uterus ruptured, causing massive hemorrhaging. Mrs. Angrand died as a result of the rupture.
Roland Angrand, as personal representative of his deceased wife, brought a malpractice action for wrongful death against the Foxes and Dr. Key[1] in order to recover damages pursuant to section 768.21, Florida Statutes (1985), for himself as surviving spouse, the decedent's son, and the decedent's estate. Dr. Susan Fox was dismissed from the case, and Dr. Morry Fox settled prior to trial. The case against Dr. Key proceeded to trial, and the jury rendered a verdict against him. The damages awarded were set off by the amount Angrand received from various defendants prior to trial. Key appealed the judgment, claiming that the trial court erred in excluding the Foxes' testimony based on the Deadperson's Statute, section 90.602, Florida Statutes (1991), and in permitting Dr. Larry Platt, Angrand's expert damage witness on grief,[2] to testify.
Specifically with respect to his first claim, Key alleged that the Foxes, as prior defendants in the lawsuit, were not "interested" in the action within the meaning of the Deadperson's Statute. The district court agreed but did not reverse on this basis because it determined that Key failed to offer any proof of the substance of the Foxes' *1148 testimony as required by section 90.104, Florida Statutes (1991).[3]
Although the district court determined Key's first claim did not provide a sufficient basis to reverse the trial court's judgment, it found that the erroneous admission of Dr. Platt's testimony required reversal for several reasons. First, the court concluded Dr. Platt did not testify to anything that was outside the common experience of the particular jury members, most of whom had experienced the death of a loved one in the past. Key, 630 So.2d at 650. Additionally, the district court's review of the record revealed that Dr. Platt's testimony added nothing beyond what the survivors themselves, their minister, and other family members testified to as to the close family relationship Mrs. Angrand had with her husband and son, as well as the loss felt by them after her death. Id. Finally, the court concluded that Dr. Platt's testimony was unfairly prejudicial because the jury, based on the fact that the testimony came from an expert, might have given it undue weight. Id.
In reversing the trial court, the district also court noted that the trial judge was reluctant to admit Dr. Platt's testimony but did so based on Shelburne.[4]Key, 630 So.2d at 651. In Pardo v. State, 596 So.2d 665, 666 (Fla. 1992), we made clear that "in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." The trial court thus correctly recognized that it was bound by the Fourth District Court of Appeal's conclusion in Shelburne, that grief and bereavement are not subjects within the normal everyday comprehension of jurors.
In Shelburne, Dr. Platt was permitted to testify about grief and bereavement generally and about how the plaintiffs, whose son had been killed, worked their way through the grief process, where they were in the grief process at the time of trial, what factors had affected their response to their son's death, and what grief they were likely to experience in the future. Shelburne, 576 So.2d at 336. The court held that the testimony was admissible after determining that Dr. Platt was a qualified expert, that the probative value of his testimony outweighed any prejudicial effect, and that his testimony assisted the jurors in understanding a subject that was clearly not within a person's normal everyday comprehension.
We resolve the conflict between Shelburne and this case by narrowing the decision in Shelburne. A trial court is to be afforded broad discretion in determining the subject on which an expert may testify in a particular trial. Town of Palm Beach v. Palm Beach County, 460 So.2d 879 (Fla. 1984). The trial court's decision will only be disregarded if that discretion has been abused. Id. at 882; see also Buchman v. Seaboard Coast Line R.R., 381 So.2d 229, 230 (Fla. 1980); Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). The Shelburne decision limited the trial court's discretion by concluding generally that grief and bereavement are not subjects within jurors' everyday understanding. We limit Shelburne to its facts and reject this comprehensive finding as applicable to all wrongful death cases. Affording the trial court discretion in respect to the type of testimony offered by Dr. Platt is necessary to implement the intent of section 90.702, which is to admit expert testimony when it will assist the trier of fact in understanding the evidence or in determining a fact in issue.
Clearly, psychiatrists, psychologists, or other qualified physicians who have treated a survivor or reviewed records concerning *1149 a survivor's treatment for physical or mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent may provide testimony which will assist the jury in understanding evidence and deciding damages issues. Further, we recognize that the experience, age, and other relevant information about the jurors or the facts in a particular case could provide a basis for the trial judge to conclude that Dr. Platt or a person with similar expertise, training, and education would assist the jury in understanding the evidence or in deciding the appropriate damages. These are factors to be considered by the trial judge in the exercise of his or her discretion.
That discretion, however, is not boundless. Johnson, 393 So.2d at 1072. The trial court should exercise its discretion so that only expert testimony which will assist the trier of fact is admitted. An expert's testimony should not be admitted merely to relay matters which are within the common experience of the jurors or to summarize what the expert has been told by lay witnesses. Based on our review of the record, we conclude that the trial judge, acting properly within his discretion, could have concluded that Dr. Platt's testimony added nothing to the jurors' knowledge in this case.
In a wrongful death action such as this, section 768.21 does not designate "grief" as a recoverable damage. Rather, a surviving spouse may recover for "loss of the decedent's companionship and protection and for mental pain and suffering." § 768.21(2), Fla. Stat. (1985). A minor child may recover for "lost parental companionship, instruction, and guidance and for mental pain and suffering." § 768.21(3), Fla. Stat. (1985). The relevant testimony on these issues usually comes from the survivors, friends, ministers, and others who testify as fact witnesses, as opposed to experts, because it has long been the rule in this state that there is no objective standard by which to measure these kinds of damages. Technical or mathematical calculations are impossible to make. The jury, guided by its judgment and everyday life experiences, is in the best position to make a fair assessment of these damages. In Braddock v. Seaboard Air Line Railroad Co., 80 So.2d 662 (Fla. 1955), this Court stated:
Jurors know the nature of pain embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right.
Id. at 668. In addition, the seminal case of Mills v. Redwing Carriers, Inc., 127 So.2d 453 (Fla. 2d DCA 1961), provides an analysis which we find applicable:
When facts are within the ordinary experience of the jury, the conclusion from those facts will be left to them, and even experts will not be permitted to give conclusions in such cases. Expert testimony is admissible only when the facts to be determined are obscure, and can be made clear only by and through the opinions of persons skilled in relation to the subject matter of the inquiry. Consequently the opinion of an expert should be excluded where the facts testified to are of a kind that do not require any special knowledge or experience in order to form a conclusion, or are of such character that they may be presumed to be within the common experience of all men moving in ordinary walks of life. The reasons for this rule are that where the facts are such that the jury is competent, from common knowledge and experience, to form conclusions thereon, it is their province to do so, and to permit expert testimony in such an instance presents the potential danger that the jury may forego independent analysis of the facts and bow too readily to the opinion of and expert or otherwise influential witness.
Id. at 456 (citations omitted); see also Buchman, 381 So.2d at 230; Florida Power Corp. v. Barron, 481 So.2d 1309 (Fla. 2d DCA), review dismissed, 488 So.2d 829 (Fla. 1986).
Accordingly, we approve the district court's decision to reverse and remand for a new trial on the issue of damages. Because Shelburne foreclosed the exercise of the trial *1150 court's discretion with regard to the admission of expert testimony, we disapprove Shelburne to the extent it is inconsistent with our decision. We, however, do not agree with the district court that Dr. Platt's testimony was so prejudicial as to require reversal of the trial court's judgment entering the jury's verdict on the issue of liability. We therefore quash the district court's decision reversing judgment on that issue.
It is so ordered.
HARDING, J., concurs with an opinion, in which OVERTON, J., concurs.
GRIMES, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., dissents with an opinion, in which SHAW and KOGAN, JJ., concur.
GRIMES, Chief Justice, concurring in part and dissenting in part.
I agree with the majority opinion's analysis of expert testimony on the subject of grief. I also agree that while the grief testimony issue requires a new trial on damages, Dr. Platt's testimony was not so prejudicial as to require a new trial on liability. However, there is another issue in this case which dictates that the judgment on liability should be reversed.
As noted in the majority opinion, the district court of appeal held that Dr. Morry Fox and Dr. Susan Fox were competent to testify because they were not interested in the action within the meaning of the deadperson's statute. This ruling was clearly correct because Angrand had settled his claim against Dr. Morry Fox, and Dr. Susan Fox had been dismissed from the case and the statute of limitations had expired. Parker v. Priestley, 39 So.2d 210 (Fla. 1949) (must be a present and vested interest to disqualify a witness under section 90.05); Palmer v. Liberty National Life Ins. Co., 499 So.2d 903 (Fla. 1st DCA 1986) (prior stockholder of defendant company not interested party where stock is divested prior to trial), review denied, 508 So.2d 15 (Fla. 1987); Security Trust Co. v. Grant, 155 So.2d 805 (Fla. 3d DCA 1963) (plaintiff's attorney who had signed contingency fee agreement but had withdrawn from case prior to trial and thus entitled only to quantum meruit was not an interested party); see Charles W. Ehrhardt, Florida Evidence § 601 at 333-34 (1993 ed.).
However, the court did not reverse on this point because it concluded that Dr. Key had failed to offer any proof as to what the Foxes would testify as required by section 90.104(1)(b), Florida Statutes (1991). This statute reads as follows:
(1) A court may predicate error, set aside or reverse a judgment, or grant a new trial on the basis of admitted or excluded evidence when a substantial right of the party is adversely affected and:
... .
(b) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked.
Dr. Key points to Seeba v. Bowden, 86 So.2d 432 (Fla. 1956), in which this Court stated that it was unnecessary to make a proffer of excluded testimony in order to preserve error where the testimony is excluded on the basis that the witness is incompetent. Mr. Angrand responds that this rule no longer prevails in view of the subsequently enacted section 90.104(1). I find it unnecessary to address this dispute because I am convinced that the substance of the evidence that the Drs. Fox would have provided was apparent at the time the judge held that the witnesses were incompetent to testify. I reach this conclusion because the Angrands' motion in limine which prompted the judge's ruling stated in pertinent part:
COMES NOW the Plaintiffs, by and through their undersigned counsel and hereby move this Honorable Court for an order precluding the Defendant from utilizing, eliciting or making known to the trier of fact the following testimony or inferences:
1. That Dr. Morry Fox, a prior defendant herein, had allegedly given orders or instructions to the decedent which she failed to heed and/or any other communications *1151 between that doctor and the decedent herein.
2. That Dr. Susan Fox, a prior Defendant herein, had allegedly given orders or instructions to the decedent which she failed to heed and/or any other communications between that doctor and the decedent herein.
The prejudicial nature of this ruling became painfully obvious when the judge later denied Dr. Key's request for an instruction on comparative negligence because there was no evidence to support the claim. Inasmuch as Dr. Key was improperly precluded from introducing evidence of the Foxes' instructions to the decedent which allegedly went unheeded, he should be granted a new trial on both liability and damages.
HARDING, Justice, concurring.
I concur with the majority opinion. However, I would go one step further and suggest that, except in unusual circumstances expert evidence concerning grief not be admitted. Contrary to the suggestion of my colleagues in dissent, I find that grief is a subject generally understood by the average person. Likewise, I do not believe that using a counsellor to help a person through the grief process can be equated with requiring an expert to explain grief to a jury.
OVERTON, J., concurs.
ANSTEAD, Justice, dissenting.
I would quash the opinion being reviewed and, with minor qualifications, approve the cogent and scholarly opinion of Chief Judge Hersey in Holiday Inns, Inc. v. Shelburne, 576 So.2d 322 (Fla. 4th DCA), review dismissed, 589 So.2d 291 (Fla. 1991). That case involved the identical issue and the same expert witness involved herein.
I am not certain of the standard set by the majority opinion on the admission of expert testimony on the subject of grief. While the majority opinion speaks in terms of a trial court's discretion, it appears to adopt a per se bright-line rule excluding such testimony by its holding that such subject is "within the common experience of the jurors." Majority op. at 1149. Yet, the majority also holds:
Clearly, psychiatrists, psychologists, or other qualified physicians who have treated a survivor or reviewed records concerning a survivor's treatment for physical or mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent may provide testimony which will assist the jury in understanding evidence and deciding damages issues.
Majority op. at 1148-49. Does this mean a treating psychiatrist can testify about grief but an expert like Dr. Platt cannot? Looks like it to me. Interestingly enough, Dr. Platt teaches those other experts about the grief process.
Grief, of course, is part of the pain and suffering that occurs when we suffer the loss of a loved one. In its common form, we probably all have some knowledge and understanding of grief. However, that knowledge may vary widely among a group of jurors, some of whom, because of age or good fortune, may have never suffered the loss of a loved one, while some less fortunate or older may have suffered greatly. This Court made this very point in another context when it eloquently stated in Winner v. Sharp, 43 So.2d 634, 636-37 (Fla. 1949):
Those who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system.
So, it is not entirely clear to me that grief is a subject that is well known and understood by all. The nature and degree of grief may vary, and dealing with it may be difficult and complicated. Unfortunately, for instance, it is almost commonplace today for us to see grief experts or counselors dispatched to schools or workplaces when a student or employee has died or been killed.
We should all be concerned about the proliferation of experts in the court system, and caution is necessary. However, I believe we have drawn the wrong wavy line here. There may be a great deal more justification for admitting the testimony of a recognized *1152 expert on grief like Dr. Platt, for example, than in approving, as this Court did in Buchman v. Seaboard Coast Line R.R., 381 So.2d 229, 229-30 (Fla. 1980), the testimony of a human factors expert to explain the dynamics of a "complicated intersection." Jurors are much more likely to have worked their way through complicated highway intersections than to have worked their way through a serious episode of grief.
It is also important to note that Dr. Platt's qualifications have not been challenged and, in fact, he teaches other experts. To me, this means he is just as qualified as the psychiatrists, psychologists, or other experts referred to in the majority opinion who apparently will be allowed to testify about the "mental sequelae related to mental pain and suffering caused by the death of a survivor's decedent." "Mental sequelae" sounds like "grief" to me.
SHAW and KOGAN, JJ., concur.
NOTES
[1] Angrand also brought suit against several other parties, but those parties either settled prior to trial or were voluntarily dismissed following Dr. Key's trial.
[2] Dr. Platt, who the trial court recognized as an expert in the area of grief and bereavement, has a Ph.D. in sociology and has conducted postdoctoral studies in grief and bereavement. He is the director of the M.A. program in sociology at Georgia Southern College, where he also teaches bachelor and graduate level courses that focus on death and dying. He has taught seminars on grief and has acted as a consultant for groups who work with the terminally ill. Additionally, he has produced several publications and books on the subject of grief. For this case, Dr. Platt conducted several interviews with Mr. Angrand and Mrs. Angrand's son. He did not counsel or treat the survivors.
[3] While we have discretion to consider issues ancillary to those certified to this Court, we decline to review the issues pertaining to the admissibility of the Foxes' testimony. See Lee v. State, 501 So.2d 591, 592 n. 1 (Fla. 1987); Trushin v. State, 425 So.2d 1126, 1130 (Fla. 1982).
[4] With regard to the Shelburne decision the trial judge stated:

[T]he district court seems to indicate that the subject of grief and bereavement is not an area within the normal everyday comprehension of the jurors. I must say I'm rather surprised. However, that is their opinion. With the background and the fact that it's [the field of grief] taught at three hundred schools, of course, I can understand why it might be, under some circumstances, for psychologist and psychiatrist, but with this appellate decision I guess I'm stuck with it.