800 So.2d 631 (2001)
FLORIDA EMERGENCY PHSICIANS-KANG AND ASSOCATES, M.D., P.A., Appellant,
v.
H. Clay PARKER, as Personal Representative of the Estate of Gabriel David Anderson, Appellee.
No. 5D00-1400.
District Court of Appeal of Florida, Fifth District.
October 12, 2001.
Rehearing Denied December 7, 2001.
*632 Shelley H. Leinicke & Richard E. Ramsey of Wicker, Smith, Tutan, O'Hara, McCoy, Graham & Ford, P.A., Ft. Lauderdale, for appellant.
Marcia K. Lippincott of Marcia K. Lippincott, P.A., Lake Mary and Elizabeth H. Faiella of Elizabeth H. Faiella, P.A., Winter Park, for appellee.
ORFINGER, R.B., J.
Florida Emergency Physicians-Kang & Associates, M.D., P.A. (FEP) appeals a final judgment in favor of H. Clay Parker, as personal representative of the Estate of Gabriel Anderson, in a wrongful death action arising out of a medical negligence claim. On appeal, FEP argues that the trial court erred by (1) refusing to compel two of Anderson's minor children to participate in a compulsory psychological examination pursuant to Florida Rule of Civil Procedure 1.360; (2) excluding evidence that Anderson was a "deadbeat dad"; and (3) disallowing evidence that the mother of two of Anderson's minor children had remarried.
Gabriel Anderson, age 24, died from a ruptured aneurism, leaving three surviving children. A jury found FEP and two of its physician employees, Angela Garcia, M.D., and Kahang Chan, M.D., 75% responsible for Anderson's death. The jury also found Phillip St. Louis, M.D., a non-party, 25% responsible for Anderson's death. The jury awarded damages of $3,000,000 to each child, reduced to $2,225,000 per child due to Dr. St. Louis' negligence. The record contains substantial competent evidence to support the jury's finding of liability.
At the time of his death, Anderson resided with Carrie Anderson (Carrie) and their two children, Devin, age three, and *633 Alanna, age two. Anderson was also the father of Samantha Irelan, age seven, born as a result of a previous relationship with Susan Irelan with whom Samantha resided in Georgia. Although Carrie considered herself to be Anderson's wife, they were never legally married. Rather, Carrie claimed that they had a common-law marriage recognized by the state of Georgia; however, this was never established as a matter of law.
After Anderson died, his personal representative brought an action against FEP under the Florida Wrongful Death Act.[1]See §§ 768.16-.27, Fla. Stat. (1999). The action was brought solely on behalf of Devin, Alanna, and Samantha, Anderson's three minor children. Carrie did not bring a claim. The estate, on behalf of the children, sought compensation solely for "lost parental companionship, instruction, and guidance and for mental pain and suffering," pursuant to section 768.21(3). No claim was brought for economic damages.
Prior to trial, FEP sought a compulsory psychological examination of Devin, then age three, and Alanna, then age four, pursuant to rule 1.360. Importantly, no examination of Samantha was sought, although unlike Devin and Alanna, FEP had taken the depositions of Samantha and her mother. Rule 1.360(a)(2) provides:
(a) A party may request any other party to submit to ... [an] examination by a qualified expert when the condition that is the subject of the requested examination is in controversy.
* * *
(2) An examination under this rule is authorized only when the parties submitting the request has good cause for the examination. At any hearing the party submitting the request shall have the burden of showing good cause.
The estate, through its personal representative, objected to the examination contending that (1) the mental condition of the minors was not in controversy; (2) there was no good cause for such an examination; and (3) the examination would be an invasion of the children's privacy. Though not argued by the estate, the trial judge concluded that the children were not parties to the litigation, and therefore, not subject to the requirements of rule 1.360.
A wrongful death action may be brought only by the personal representative for the benefit of the decedent's survivors and estate. Williams v. Infinity Ins. Co., 745 So.2d 573, 576 (Fla. 5th DCA 1999). See § 768.20, Fla. Stat. (1999); Cont'l Nat'l Bank v. Brill, 636 So.2d 782, 784 (Fla. 3d DCA 1994). The personal representative is a nominal party to the action while the estate and the survivors are the real parties in interest on whose behalf recovery is sought. Morgan v. Am. Bankers Life Assurance Co. of Fla., 605 So.2d 104, 104 (Fla. 3d DCA 1992) ("At the outset, we recognize that under substantive law the decedent's survivors are the real parties in interest. Nonetheless, the Legislature has mandated that a decedent's personal representative is the party `who shall recover for the benefit of the decedent's survivors and estate all damages....'") (quoting § 768.20, Fla. Stat. (1991)); see also City of Pompano Beach v. T.H.E. Ins. Co., 709 So.2d 603, 605 (Fla. 4th DCA 1998) ("They are brought on behalf of the survivors, not to recover for injuries to the deceased, but to recover for statutorily identified losses the survivors have suffered directly as a result of the death.") (citation omitted); Ding v. Jones, 667 So.2d 894, 895 (Fla. 2d DCA 1996) ("Even though a wrongful death action *634 must be brought by the personal representative of the estate as a nominal party on behalf of the surviving spouse, the real party in interest is the surviving spouse."). Here, the wrongful death action was brought on behalf of Anderson's three minor children, the real parties in interest. Accordingly, the trial court erred in concluding that Anderson's minor children were not parties to the action and therefore not subject to the provisions of rule 1.360. But our inquiry does not stop there. We must next determine whether the ruling was right for some other reason or whether the error was harmless. "Even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling." Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla. 1999).[2]
As previously discussed, rule 1.360(a)(2) provides that subject to a showing of a good cause, "a party may request any other party to submit to ... [an] examination by a qualified expert when the condition that is the subject of the requested examination is in controversy." Fla. R. Civ. P. 1.360(a)(1). When a plaintiff in a negligence action asserts that he has sustained a mental or physical injury, he places his condition in controversy, and good cause for the examination is therefore shown.[3]See Broward County Sch. Bd. v. Cruz, 761 So.2d 388, 392 (Fla. 4th DCA), rev. granted, 779 So.2d 270 (Fla. 2000); Dominique v. Yellow Freight Sys., Inc., 642 So.2d 594 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1193 (Fla.1995). It is not enough that the defendants are allowed to review the plaintiff's medical or psychiatric records and to depose plaintiff's medical or psychiatric experts. Dominque, 642 So.2d at 596. Neither does the age of a child automatically exempt the child from submitting to a compulsory examination, although a child's age may be considered by a judge when ruling on an objection to a request for a compulsory examination and, if appropriate, in fashioning protective orders pursuant to Florida Rule of Civil Procedure 1.280(c).[4]
*635 In the instant case, the surviving children sought damages solely for the loss of parental companionship, instruction and guidance and for mental pain and suffering. See Angrand v. Key, 657 So.2d 1146 (Fla.1995). At issue, then, is whether, and to what extent, the children suffered mental pain and suffering following their father's death and what, if any, damages were sustained as a result of the loss of their father's companionship, guidance and instruction.
In Angrand, the supreme court, while acknowledging that trial judges have broad discretion in determining the subjects on which an expert may testify, limited their use in wrongful death cases as it relates to the emotional loss sustained by a survivor in a wrongful death action. However, the supreme court also said:
[W]e recognize that the experience, age, and other relevant information about the jurors or the facts in a particular case could provide a basis for the trial judge to conclude that [an expert] or person with similar expertise, training and education would assist the jury in understanding the evidence or in deciding the appropriate damages.
* * *
The trial court should exercise its discretion so that only expert testimony which will assist the trier of fact is admitted. An expert's testimony should not be admitted merely to relay matters which are within the common experience of the jurors or to summarize what the expert has been told by lay witnesses.
Id. at 1148-49 (internal citations omitted). Angrand deals with the admissibility of evidence at trial; it does not preclude a compulsory psychological examination under rule 1.360 when justified, as it was in this case.[5] There are a number of questions that arise in this case that might not be within the common experience of the jurors. Does a young child suffer the same mental anguish following the death of a parent as does an older child or an adult? Does the anguish suffered by a child differ based on the closeness of the relationship with the deceased? Does it matter whether the deceased parent resided in the same household or, if not, exercised frequent visitation with the child? A psychological evaluation of the children might lead to answers of these and other questions not within the common knowledge and everyday experiences of the average juror. For these reasons, we conclude that the trial judge erred in denying the compulsory examinations of Devin and Alanna, and that the error was not harmless.[6]
As we noted earlier, FEP never requested a psychological examination of Samantha. As a result, her situation is *636 significantly different from that of Devin and Alanna. The dissent argues that it would have been futile for FEP to request an examination of Samantha because the trial court concluded as a matter of law that the children were not parties to the action, and therefore not governed by the provisions of rule 1.360. That assumes, of course, that FEP intended to request an examination of Samantha, but was dissuaded from doing so by the trial judge's earlier denial of their request regarding Devin and Alanna. We are unwilling to make that assumption. While it is certainly reasonable, as the dissent suggests, to assume that FEP did not seek an examination of Samantha because of the trial court's previous erroneous ruling, it is equally reasonable to believe that because FEP previously deposed Samantha and her mother, the decision not to seek a compulsory psychological examination was a tactical one completely unrelated to the prior ruling. No doubt, there are numerous reasons why a party might seek, or not seek, a compulsory examination. The only thing we can say for certain is that FEP did not seek an examination of Samantha in this case. Absent jurisdictional or fundamental error, an appellate court should not consider issues that were not presented to the trial court. Abrams v. Paul, 453 So.2d 826, 827 (Fla. 1st DCA 1984); see Bennett v. State, 641 So.2d 938 (Fla. 5th DCA 1994). It is the function of the appellate court to review errors allegedly committed in the trial court, not to entertain for the first time on appeal, issues which the complaining party could have, and should have, but did not, present to the trial court. Abrams, 453 So.2d at 827. See Mariani v. Schleman, 94 So.2d 829, 831 (Fla.1957) ("It is a rule of long standing that on appeal this Court will confine itself to a review of those questions, and only those questions, which were before the trial court. Matters not presented to the trial court by the pleadings and evidence will not be considered by this court on appeal."); Bennett, 641 So.2d at 939 (holding that on appeal, an appellate court should confine itself to a review of only those questions which were before the court below). Accordingly, because FEP never sought an examination of Samantha, no error exists as to her damage award.
Additionally, the dissent argues that Samantha's damage award is not supported by competent, substantial evidence. This ignores the fact that the amount of the damage award was not raised as an issue on appeal. FEP's brief raises four issues on appeal. None argues that the damage award was excessive or not supported by competent, substantial evidence. While the argument portion of the brief as well as the "statement of facts" attempts to raise additional issues, that is not sufficient to obtain appellate review. "[I]n order to obtain appellate review, alleged errors relied upon for reversal must be raised clearly, concisely, and separately as points on appeal." Singer v. Borbua, 497 So.2d 279, 281 (Fla. 3d DCA 1986). See F.M.W. Prop., Inc. v. Peoples First Fin. Sav. & Loan Ass'n, 606 So.2d 372, 376 (Fla. 1st DCA 1992) (failure to organize arguments under cogent and distinct issues on appeal presents sufficient reason for an appellate court to decline consideration of a matter); see also Fla. R.App. P. 9.210(b)(5) (1999). We do not address issues not clearly set out in the issues on appeal. F.M.W. Prop., Inc., 606 So.2d at 377-78.
FEP next argues that the trial court erred in refusing to allow evidence that Anderson was a "deadbeat dad." Specifically, FEP argues that the jury should have heard that Anderson failed to make regular child support payments for Samantha. Prior to trial, Anderson's estate *637 filed a motion in limine seeking to prevent FEP from revealing Anderson's irregular child support payments to the jury. After a hearing, the court granted the motion. The court did not preclude FEP from presenting evidence regarding Anderson's relationship with his children or the frequency of his visits or contacts with Samantha. Rather, the court only prevented FEP from presenting evidence regarding Anderson's history of child support payments. We find no error in the trial court's ruling. Samantha did not bring a claim for any economic loss. Accordingly, any testimony regarding Anderson's history of child support would have been irrelevant.
Finally, FEP argues that the trial court erred in prohibiting it from introducing evidence to show that Carrie had married (or remarried if her Georgia common-law marriage to Anderson was valid) less than a year after Anderson's death, and that her present husband, Tim Davidson, had assumed a parental role with regard to Devin and Alanna.
Section 768.21(6)(c) provides that "evidence of remarriage of the decedent's spouse is admissible" in a wrongful death action. However, even assuming that Carrie was Anderson's wife as a result of a valid common-law marriage, her marriage (or remarriage) to Davidson was irrelevant. Carrie was not a party to the litigation, asserted no claim against FEP, nor sought any damages. Alanna and Devin did not choose Tim Davidson as their new father; rather, Carrie chose him as her husband. His presence in the home does not mitigate the loss sustained by these children. For evidence to be admissible, it must be relevant. Relevant evidence is evidence tending to prove or disprove a material fact. See § 90.401, Fla. Stat. (1999). In the context of this litigation, evidence regarding Carrie's marriage to Davidson was not material in that it did not help prove or disprove FEP's liability or the damages sustained by Anderson's surviving minor children.
We find no merit in the other issues raised by FEP. The final judgment is affirmed on the issue of liability as to all parties and on the damages awarded to Samantha, but reversed for a new trial on the damage claims of Devin and Alanna.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PLEUS, J., concurs.
HARRIS, J., concurs in part and dissents in part with opinion.
HARRIS, J., concurring in part; dissenting in part.
I concur with the majority's well reasoned opinion that the trial court erred in denying the IME based on the wrong law and that such error was not harmless.[1] I *638 dissent to that part of the majority's decision holding that because the defense did not again enter the lion's den, it cannot claim the same error as it relates to the third child, Samantha.
The defense had unsuccessfully sought other discovery in this case and when it appeared before this judge concerning its request for IMEs of the Florida children, this was the judge's response:
You see, it's been unbelievable that the defense, continually in this case, with children three and four, have been constantly before this Court for physical examinations, for medical records, for and now psychological records, when they're not even parties to the case. That is the purpose of the rule and the reason why the legislature has indicated that a personal representative brings this suit. And I think it's just horrific that you continue to come before this Court seeking discovery on three-and four-year old children.
Now, I know you have not done it specifically yourself; there have been other attorneys in here arguing this, and I think this must be the third or fourth hearing that I have had on this issue, and I've said from the beginning that these children are to be protected, and that's why there is a personal representative in the case. They are not parties, they don't come under the IME rule. Now, you may have other arguments, and the plaintiff hasn't even had a chance to make an argument, but it's just very frustrating for the Court to have to face this issue over and over and over again.
The majority explains that the reason that the defense, which had not specifically requested an IME of Samantha, should not be heard to complain on appeal that it was denied the opportunity to have an IME of her is that "the function of the appellate court [is] to review errors allegedly committed in the trial court, not to entertain for the first time on appeal, issues which the complaining party could have, and should have, but did not, present to the trial court." The point is, of course, that the issue was clearly presented to the trial court and it unequivocally, but wrongly, ruled on it. After first seeking the medical and school records of the Florida children (which also were denied), the defense moved for an IME of the Florida children. The IME was not denied because of any reason personal to either child but because any child involved in a wrongful death case, and this would include Samantha, is not a party to the action. Further, the court warned the defense that it did not want the issue raised again. Had the defense, after seeking medical or school records from Georgia relating to Samantha, sought an IME of Samantha from this judge its action would have been not only hopeless but perhaps, since the court has the power of contempt, dangerous. The law does not require a useless act. See Young v. State, 664 So.2d 1144 (Fla. 4th DCA 1995).
It should be noted that in this case there was no evidence presented that Samantha was in any way affected by her father's death. Neither Samantha nor her mother testified. No friends or relatives of Samantha testified that she suffered any emotional distress at all from the loss of this father who, insofar as this record reveals, had no significant contact with this daughter for a number of years. Any loss of parental companionship occurred long before the father's death. There was no indication that Samantha cried, lost sleep, or exhibited any indication that she missed her father any more after his death than when he relocated with his new family to Florida. The only proof of damages offered was that the deceased was Samantha's *639 biological father and that he died as a result of malpractice. To affirm this $3,000,000 award for pain and suffering and loss of companionship, unsupported by the evidence, because the court is willing to assume that the failure to seek an IME of the Georgia child was trial strategy instead of the recognition of the hopelessness of such request is unjustified. This is particularly true when appellee did not suggest that the issue of the IME as to Samantha was not properly before this court. Even appellee recognized the hopelessness of requesting the IME under the circumstances of this case.
NOTES
[1] A claim was also brought against Dr. St. Louis but was settled prior to trial.
[2] Ordinarily, the decision to grant or deny a requested compulsory examination is within the discretion of the trial judge, and the standard of appellate review would be whether the ruling constituted an abuse of discretion. See, e.g., Pagan v. State, 599 So.2d 744 (Fla. 3d DCA 1992) (stating that the question of whether to order additional psychological examination of child victim by court-appointed expert was within the sound discretion of the trial court). However, in this instance, the judge failed to apply the correct rule of law in reaching his decision. Accordingly, the trial court's ruling is subject to de novo review. See, e.g., Philip J. Padovano, Florida Appellate Practice § 9.4 (2nd ed.1997).
[3] As the fourth district said in Dominique v. Yellow Freight Sys., Inc.:

The Committee Notes to Rule 1.360 state, "The good cause requirement under this rule has been retained so that the requirements of Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), have not been affected."
In Schlagenhauf, the Supreme Court, in construing the federal rule on examinations, stated that while good cause is generally not shown by mere conclusions:
[T]here are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury (citation omitted).
379 U.S. at 118, 85 S.Ct. at 243.
642 So.2d 594, 595-96 (Fla. 4th DCA 1994) (emphasis added).
[4] See, e.g., Broward County Sch. Bd. v. Cruz, 761 So.2d 388, 393-94 (Fla. 4th DCA), rev. granted, 779 So.2d 270 (Fla.2000) (15-year-old with developmental age of 7 or 8-year-old may be ordered to undergo a compulsory neurological examination); Palank v. CSX Transp., Inc., 657 So.2d 48 (Fla. 4th DCA 1995) (compulsory psychiatric examination of 4 and 8-year-old approved).
[5] At least one other Florida court has recognized that Angrand permits expert testimony as to grief and bereavement in limited circumstances. See St. Mary's Hosp., Inc. v. Brinson, 685 So.2d 33, 36 (Fla. 4th DCA 1996) (trial court did not abuse its discretion in admitting doctor's testimony on the issue of grief and bereavement because many jurors had no experience with a young child's death or the grief that follows, and the trial court reasonably concluded that the testimony would assist the jury's understanding).
[6] While we conclude that the trial judge should have compelled the two minor children to participate in a compulsory psychological examination, we do not suggest that reversal is required every time a trial judge denies such an examination, or conversely, that the results of such an examination would be admissible at trial. We state simply that in light of Cruz and Dominique and the facts of this case, the error was not harmless.
[1] The jury entered a judgment for $3,000,000 for each child regardless of the child's age or relationship with the father. It is as though the jury believed that regardless of the individual suffering caused to a child because of the loss of a parent, $3,000,000 is the appropriate award. This, I believe, is an inappropriate basis for the award of damages. Does a two- or three-year-old child suffer the same mental anguish as does an eight-year-old child who has a good relationship with the father? Does the mental anguish of one who has a good parent/child relationship with the deceased equate with that of a child who has not even seen the father for some years? Does it matter insofar as the degree of anguish is concerned whether the deceased parent was a hands-on, nurturing parent or merely another occupant of the same household or, as in the case of Samantha insofar as this record reveals, merely the biological father? Does one size really fit all? A psychological evaluation of the individual child might well lead to some answers not readily available to the average juror. The jurors and the parties are entitled to this assistance.