880 So.2d 768 (2004)
Timothy Davis BARFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-223.
District Court of Appeal of Florida, Second District.
June 16, 2004.
Rehearing Denied August 5, 2004.
James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
A jury convicted Timothy Barfield of first-degree murder and burglary with assault or battery. Barfield has appealed his convictions, arguing for a new trial on two grounds. We reject without further discussion Barfield's argument that the State improperly impeached him at trial. Barfield also maintains that the court erred in refusing to permit him to present expert testimony by an accident reconstructionist. We agree, and for that reason we reverse and remand for a new trial.
Numerous witnesses testified at Barfield's trial, and their testimony was often conflicting. The undisputed facts established that a pickup truck was stolen from a Shell gas station while the truck's owner was inside the station. When he saw his *769 pickup being driven away he raced out and leaped into the bed. The driver accelerated to a high speed and began swerving, apparently attempting to throw the victim out. Many witnesses saw the victim being tossed around in the truck bed and heard him crying for help. The stolen truck eventually hit another vehicle, causing the driver of the truck to lose control and crash. The victim died a short time later from injuries sustained in the accident.
A witness who lived near the accident scene saw a man leave the truck and flee into a swampy area next to the witness's home. Employing a tracking dog, the police found Barfield in a wooded area about a mile and half away.
Barfield told the jurors his version of the day's events. He said he went to the Shell station to call his mother from the pay phone and ask for a ride home. But he saw a friend, an Hispanic youth named Vega, backing up in a pickup truck. Vega opened the passenger door and told Barfield to get in. Just after he climbed into the truck, Barfield heard a man beating on the back window. Vega began driving very fast, swerving and trying to throw the man out of the truck bed. Barfield was scared and crouched on the passenger side floorboard. He begged Vega to stop, but Vega refused. Eventually, Vega lost control of the truck and it crashed. Barfield was knocked unconscious. He remembered feeling dizzy when he came to, and leaving the truck through the driver's side door, which was open. He did not see Vega but he saw the victim walking around. Barfield was scared and ran into the wooded area because he was a convicted felon and was in possession of marijuana. As he ran, he discarded the marijuana in a lake. A police dog eventually found him and the canine officer arrested him.
Several witnesses contradicted Barfield's tale that he was an unwitting passenger. At least four people testified that they saw only one person in the cab of the truck, and several of them described a man who looked like Barfield. The witness who first arrived at the wreck saw only one man leave the cab.
But other testimony corroborated Barfield's story. A witness parked at the Shell station saw two men in the cab of the pickup, one of whom appeared to be Hispanic and about sixteen or seventeen years old. She said that the Hispanic youth drove the truck out of the parking lot. The driver of the vehicle hit by the stolen truck testified she saw the silhouettes of a driver and a passenger in the cab. Another witness, a fifteen-year-old girl who observed the accident, reported that an Hispanic boy jumped out of the truck and ran into the swamp. She knew the boy from school and identified him as Vega. The police apprehended Vega near the scene, and the fifteen-year-old said he was the person she had seen leaving the cab of the truck after the crash.
On rebuttal, however, the State called several witnesses who testified that Vega did not know how to drive. Vega and his girlfriend's father testified he was at her home during the relevant time.
The State also presented the testimony of a fiber analyst from the Florida Department of Law Enforcement who found seventy-seven fibers consistent with Barfield's pants on a towel kept on the driver's seat of the truck. She also found four fibers on the ceiling of the cab and six fibers on the passenger's seat and floorboard, but she did not find any fibers on the driver's floorboard.
To rebut the implication of this evidence, Barfield sought to introduce the opinion testimony of an accident reconstructionist and forensic scientist concerning how the accident happened, how the *770 fibers were released, and how they could be distributed as a result of the accident. The expert would have opined that tears in the knee and back hip pocket of Barfield's pants were the result of a rollover accident and were consistent with his being a passenger who was tossed around the cab. The fibers would have been released when Barfield's pants tore. The fibers discovered on the ceiling of the cab were consistent with a rollover. Barfield's expert also believed that the many fibers found on the towel in the driver's seat and the absence of fibers on the driver's floorboard demonstrated that Barfield had crawled on his hands and knees from the passenger seat to the driver's seat after the rollover accident. The State moved to exclude the expert's opinion about the fiber evidence. It argued that the opinion did not require any specialized knowledge or experience, that it was within the common experience of an ordinary person, and that the jurors had the ability to understand the evidence. The trial court agreed and excluded the expert's testimony.
We review a trial court's decision to admit or exclude expert testimony under the abuse of discretion standard. Angrand v. Key, 657 So.2d 1146, 1148 (Fla. 1995). The intent of the evidence code is to admit expert testimony if it will assist the jury in determining a fact issue. § 90.702, Fla. Stat. (2002); Angrand, 657 So.2d at 1148. This is particularly true where an issue is hotly contested at trial and where the testimony is not merely cumulative but is critical in helping the jurors resolve the factual issues. See Bryant v. Buerman, 739 So.2d 710, 713 (Fla. 4th DCA 1999). As the previous discussion of the evidence shows, the issue of whether Barfield was driving the truck was the subject of much controversy. The State's fiber evidence was intended to convince the jurors that Barfield was the driver. The defense expert's testimony would have explained why that evidence could lead to a different conclusion.
The State argued, and the circuit court relied on, State Farm Mutual Automobile Insurance Co. v. Penland, 668 So.2d 200 (Fla. 4th DCA 1995), for the proposition that testimony of Barfield's expert addressed matters that were in the common knowledge of the jurors. While Penland also involved opinion testimony about whether a party was the driver or the passenger in a car accident, that opinion was based on the injuries to the people known to be in the car. In that case, the jurors could merely look at the physical evidence and, based on their general knowledge of what happens in a car accident, determine that the person with facial lacerations was most probably the person who hit the windshield hard enough to break it. They could compare the description of the interior of the car to the various bruises and injuries suffered and determine that a passenger would not have injuries to her left hip when there was nothing on the passenger side of the car that would have come directly in contact with a hip. Id. at 203.
Injuries and their causes, in automobile accidents or otherwise, are subjects within most people's common knowledge. How fibers are released from clothing, and the possible significance of the presence or absence of fibers in a particular part of an automobile after an accident, are not. Cf. Mathieu v. Schnitzer, 559 So.2d 1244, 1245 (Fla. 4th DCA 1990) (remanding for a new trial where the court refused to permit expert testimony concerning the damage found on the defendant's car in relation to the plaintiff's injuries, and holding that what such evidence means to a trained investigator is not within the common understanding of the average layman). The expert opinion in this case could have assisted *771 the jury in determining the significance of this physical evidence. The trial court abused its discretion in excluding the testimony of Barfield's expert. We reverse and remand for a new trial.
Affirmed in part, reversed in part and remanded.
ALTENBERND, C.J., and CASANUEVA, J., Concur.